No. 103,672

AEROFLEX WICHITA, INC., *Appellant*, v. KENNETH W. FILARDO and CHRIS ALLEN, *Defendants*, and TEL-INSTRUMENT ELECTRONICS CORP., *Appellee*.

(275 P.3d 869)

Opinion filed April 27, 2012.

*James D. Oliver*, of Foulston Siefkin LLP, of Overland Park, argued the cause, and *Jay F. Fowler* and *Timothy B. Mustaine*, of the same firm, of Wichita, were on the briefs for appellant Aeroflex Wichita, Inc.

*F. James Robinson, Jr.*, of Hite, Fanning, & Honeyman, L.L.P., of Wichita, argued the cause, and *Scott M. Hill*, of the same firm, was with him on the brief for appellee Tel-Instrument Electronics Corp.

The opinion of the court was delivered by

LUCKERT, J.: After allowing discovery on the issue of whether Kansas courts could exercise personal jurisdiction over some of the defendants in this case, the district court granted defendant Tel-Instrument Electronics Corp.'s (TIC) motion to dismiss for lack of personal jurisdiction. On interlocutory appeal from that decision, the parties dispute the correct standard for judging a motion to dismiss for lack of personal jurisdiction filed under K.S.A. 2011 Supp. 60-212(b)(2) when that motion is decided after discovery and after submission of supporting affidavits, documents, and deposition excerpts but without an evidentiary hearing. We hold that plaintiff Aeroflex Wichita, Inc. (Aeroflex), as the party with the ultimate burden of establishing jurisdiction and as the party responding to a motion to dismiss presented to the district court without an evidentiary hearing, need only establish a prima facie basis for jurisdiction. In determining if that prima facie burden has been met, a district court should view factual disputes in the light most favorable to the nonmoving party, and an appellate court applies the same standard de novo.

Applying that standard, we determine that the district court erred by weighing the evidence rather than granting all favorable inferences to Aeroflex. Aeroflex presented a prima facie case of jurisdiction based on a conspiracy between TIC and its codefendants, over whom the court has jurisdiction. This prima facie showing provides a basis to conclude (1) there was an agreement to steal trade secrets and other proprietary information from Aeroflex and (2) there were acts performed in Kansas by the coconspirators in furtherance of the conspiracy. Consequently, we reverse the district court's ruling on the motion to dismiss and remand for further proceedings.

## FACTS AND PROCEDURAL BACKGROUND

This lawsuit arose out of a multimillion-dollar contract awarded in 2009 to TIC by the United States Army. The contract related to a high-technology radar-transponder test system. Both TIC and Aeroflex participated in a competitive bid contest that led to the 2009 contract. Before the 2009 contract, the system had been manufactured for the Army by Aeroflex.

As early as 2002, it was known the Army was planning to solicit bids for an upgrade to the system that Aeroflex had been manufacturing. By at least that point in time, Aeroflex began working on an upgrade. From 2005 to 2006, the Army issued three sole-source proposals for Aeroflex to provide the upgraded system. The first proposal was cancelled, and the second was negotiated but never awarded. After the third request for proposal, TIC protested the decision to issue a sole-source contract, asserting it had the capability to perform the upgrade. The Army reviewed TIC's protest and ultimately opened the contract award process to competition.

Soon after the Army's decision, TIC hired two Aeroflex employees. First, TIC hired Chris Allen as its Director of Marketing. According to Aeroflex, Allen had "intimate knowledge" of the pricing structure for the system. He was also aware of and had been involved in the design process as well as the preparation of Aeroflex's previous proposals to the Army. Second, just a few months after hiring Allen, TIC hired Kenneth Filardo as its Director of Engineering. Filardo had been the chief design authority for Aeroflex's

work on the upgrade. According to Aeroflex, Filardo had been "intimately involved in each facet of the design, development and manufacture of the . . . test sets and their upgrades" and had played a "key role" in the development of Aeroflex's proposals to the Army.

Allen and Filardo had each signed an Aeroflex "Employee Patent, Copyright, and Non-Disclosure Agreement." Upon their resignations from Aeroflex, Aeroflex sent letters to each of them and reminded them of the agreement.

Approximately 1 year later, the Army solicited proposals for the upgrade kits. After 6 months of review and negotiation, the Army awarded the contract to TIC. Aeroflex filed a protest of the contract award, alleging in part that TIC had stolen its trade secrets. The protest led to an investigation and report by the Army to the Government Accountability Office (GAO) rejecting Aeroflex's claim.

Aeroflex then filed this lawsuit. In a verified petition, Aeroflex alleged Filardo and Allen breached their nondisclosure agreements with Aeroflex. As to TIC, Aeroflex alleged TIC could not have economically developed or manufactured an upgrade without using Aeroflex's trade secrets and confidential and proprietary information. Aeroflex alleged claims of misappropriation of Aeroflex's trade secrets, tortious interference with Aeroflex's business relationships, and civil conspiracy against all three defendants.

In asserting a basis for a Kansas court to exercise personal jurisdiction over the defendants, the verified petition alleged Filardo is, and at all times material to the lawsuit has been, a Kansas resident. Aeroflex acknowledged that Allen had been an Arizona resident since 2003, but it alleged his many contacts with Kansas through his employment with Aeroflex were sufficient for the court to have personal jurisdiction over him. The petition also stated: "Filardo, Allen, and TIC . . . intentionally targeted Aeroflex Wichita, whose headquarters and facilities they knew to be located in Kansas, and knew that these actions, if successful in their aims, would cause economic injury in Kansas to Aeroflex Wichita."

After being served with the petition, TIC specially appeared and challenged personal jurisdiction by filing under K.S.A. 2011 Supp. 60-212(b)(2) the motion to dismiss that is the subject of this appeal.

Before ruling on the motion, the district court permitted limited discovery, ordering that Aeroflex "may take depositions on the jurisdictional issue of defendant Kenneth Filardo, of defendant [TIC], under K.S.A. 60-230(b)(5), and a corporate representative . . . regarding business activities of [TIC], in Kansas." Later, after limited discovery confirmed that Filardo had been working for TIC from his Kansas residence approximately 1 week per month, the district court allowed additional discovery relating to Filardo's time sheets.

At the completion of discovery, Aeroflex responded to the motion to dismiss by arguing the district court had jurisdiction under the Kansas long-arm statute, specifically K.S.A. 2011 Supp. 60-308(b)(1)(A), (B), and (E), in that TIC transacted business in Kansas, committed a tortious act in Kansas, and entered into a contract with a Kansas resident to be performed at least in part in Kansas. Affidavits and documents were attached to the written arguments. In addition, Aeroflex sought permission to file an amended petition. The district court allowed the filing of the amended petition but granted TIC's motion to dismiss.

In ruling on the motion to dismiss, the district court considered TIC's contacts with Kansas, finding:

"15. TIC is a publicly traded company that has only two Kansas shareholders accounting for less than 1% of its outstanding shares. It has and maintains no facilities, offices, leases, property, accounts, licenses, operations or employees in Kansas. . . .

"16. TIC has never focused sales efforts toward Kansas customers, targeted advertisements or bulk e-mail in Kansas, or advertised in Kansas. No employees travel to Kansas to conduct business. It generates virtually no revenue from Kansas (.12% in 2007 and .33% in 2008) and it is not subject to Kansas taxation."

The district court also found that Allen performed no work for TIC in Kansas. Filardo on the other hand did perform work on TIC's proposal from his Kansas residence, although "the exact amount can't be determined."

The district court then drew the legal conclusion that Aeroflex failed to make a prima facie showing of personal jurisdiction over TIC. In reaching this conclusion the court determined the alleged causes of action did not arise out of any business transactions in

Kansas, Aeroflex "failed to make a prima facie showing that the causes of action arose from the commission of a tortious act in Kansas," and that TIC did not enter into a contract with a Kansas resident "for some or the entire contract to be performed in Kansas." With regard to the alleged misappropriation of trade secrets as it relates to jurisdiction, the court also found Aeroflex did not show that Filardo committed an act in Kansas in furtherance of the conspiracy or that TIC purposefully availed itself of the privilege of conducting activities in Kansas. Finally, the district court found Aeroflex failed to show that the exercise of jurisdiction would be reasonable under due process requirements.

Although the district court granted TIC's motion to dismiss for lack of jurisdiction, Filardo and Allen remain as defendants. Filardo, a Kansas resident, did not raise a challenge to personal jurisdiction. And although Allen, an Arizona resident, did challenge personal jurisdiction, the district court found personal jurisdiction existed because Allen was sued for actions arising under an employment contract entered into with a Kansas resident (Aeroflex) and at least partially performed in Kansas.

Aeroflex appeals the district court's dismissal of the case against TIC. The case against Filardo and Allen was subsequently stayed by the district court, pending this appeal. This court has jurisdiction under K.S.A. 20-3018(c) (transfer by this court).

## Standard Before the District Court and the Standard of Review

Before discussing the substance of the parties' arguments, we must determine the standard or test that controlled the district court's determination of whether Kansas could exercise personal jurisdiction over TIC. This determination requires us to decide which party had the burden of persuasion and the nature of that burden. Then, we must determine the standard that applies to our review of the district court's determination of whether that standard or test was met.

The parties seem to agree that the standard or test may vary, depending on the procedural posture of the motion, that is whether the motion is considered before discovery, after discovery, or after

an evidentiary hearing. There is very little discussion of these various procedures in Kansas law or of the standard or test to be applied in each situation.

K.S.A. 2011 Supp. 60-212(b)(2), the provision under which TIC's motion was filed, provides no assistance. It does not indicate whether the decision is limited to the pleadings or whether matters outside the pleadings may be considered and, if so, what standard applies. Another portion of the statute, K.S.A. 2011 Supp. 60-212(d), applies to some motions to dismiss where matters outside the pleadings are considered, but its application is limited to motions filed pursuant to K.S.A. 2011 Supp. 60-212(b)(6) (failure to state a claim upon which relief can be granted) or K.S.A. 2011 Supp. 60-212(c) (motion for judgment on the pleadings). TIC's motion pursuant to K.S.A. 2011 Supp. 60-212(b)(2) is not included.

Kansas' statute is not unique in this regard. In fact, Kansas' statute is patterned after Rule 12 of the Federal Rules of Civil Procedure. Without direct guidance in Rule 12(b)(2), federal courts have defined procedures and the applicable standards for considering motions to dismiss for lack of personal jurisdiction. We turn to these federal decisions for persuasive guidance, as we have on other occasions when considering issues relating to civil procedure. See *Back-Wenzel v. Williams*, 279 Kan. 346, 349, 109 P.3d 1194 (2005).

Many federal cases, including decisions of the United States Supreme Court, have recognized that federal district courts have wide discretion in determining the most appropriate mechanism for resolving a motion to dismiss for lack of personal jurisdiction. See *Catholic Conf. v. Abortion Rights Mobilization*, 487 U.S. 72, 79, 108 S. Ct. 2268, 101 L. Ed. 2d 69 (1988) (recognizing a court's "inherent and legitimate authority" to issue orders of discovery and other orders as necessary for the court to determine jurisdiction); *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 n.13, 98 S. Ct. 2380, 57 L. Ed. 2d 253 (1978) ("where issues arise as to jurisdiction or venue, discovery is available to ascertain the facts bearing on such issues"); *Gibbs v. Buck*, 307 U.S. 66, 71-72, 59 S. Ct. 725, 83 L. Ed. 1111 (1939) ("As there is no statutory direction for procedure upon an issue of jurisdiction, the mode of its determination

is left to the trial court."); see also 5B Wright & Miller, Federal Practice and Procedure: Civil § 1351 (3d ed. 2004) (5B Wright, § 1351), p. 305 ("When a federal court is considering a challenge to its jurisdiction over a defendant or over some form of property, the district judge has considerable procedural leeway in choosing a methodology for deciding the motion.").

Exercising this discretion, the district court may choose from several procedures for handling a motion to dismiss. Before trial, the district court may determine the outcome based on the pleadings; " 'on the basis of affidavits alone; or it may permit discovery in aid of the motion; or it may conduct an evidentiary hearing on the merits of the motion.' [Citation omitted.]" *Serras v. First Tennessee Bank Nat. Ass'n*, 875 F.2d 1212, 1214 (6th Cir. 1989); see 5B Wright, § 1351, pp. 305 & 308-09. Additionally, rather than make a pretrial determination, the court "may await the trial on the merits with the fact issues being left to the jury for determination." 5B Wright, § 1351, pp. 308-09. Indeed, the United States Supreme Court has indicated that the determination should be deferred until trial if the issue of jurisdiction is dependent upon a decision on the merits. *Land v. Dollar*, 330 U.S. 731, 735, 67 S. Ct. 1009, 91 L. Ed. 1209 (1947). As the Tenth Circuit Court of Appeals has explained, "[t]he purpose of postponing a determination upon a jurisdictional question when it is tied to the actual merits of the case is to prevent a summary decision on the merits without the ordinary incidents of a trial including the right to jury. [Citations omitted.]" *Schramm v. Oakes*, 352 F.2d 143, 149 (10th Cir. 1965). We hold that these same principles apply in Kansas.

In this case, the district court chose to make a pretrial determination after discovery and supplementation of the record with written evidence and affidavits. TIC suggests in that procedural circumstance a plaintiff must establish the requirements for personal jurisdiction by a preponderance of the evidence. Further, it argues, if discovered evidence is presented to the district court, the court can weigh conflicting evidence and make factual findings related to jurisdiction. Finally, TIC argues that because the district court made "findings" based on such discovery "evidence," regardless of the fact that information consisted of "written materi-

als," this court should give deference to those findings and examine whether the district court's factual findings were supported by substantial competent evidence.

To support its arguments, TIC cites cases from other jurisdictions. See, *e.g.*, *Shapiro, Lifschitz & Schram, P.C. v. Hazard*, 24 F. Supp. 2d 66, 70 (D.D.C. 1998) ("[I]n situations where the parties are permitted to conduct discovery on the jurisdictional issue a plaintiff must prove personal jurisdiction by a preponderance of the evidence."); see also *Jung v. Association of American Medical Colleges*, 300 F. Supp. 2d 119, 128 (D.D.C. 2004) (quoting *Hazard*, 24 F. Supp. 2d at 70); *In re Vitamins Antitrust Litigation*, 270 F. Supp. 2d 15, 20 (D.D.C. 2003) ("[p]laintiffs must establish personal jurisdiction . . . by a preponderance of the evidence"); *BBA Aviation PLC v. Superior Court*, 190 Cal. App. 4th 421, 429, 117 Cal. Rptr. 3d 914 (2010) ("If the jurisdictional facts are conflicting, we review the lower court's factual determinations for substantial evidence, but still review its legal conclusions de novo."); *State ex rel. Cooper v. Ridgeway Brands Mfg., LLC*, 188 N.C. App. 302, 304, 655 S.E.2d 446 (2008) (Where district court denies motion to dismiss for lack of personal jurisdiction and makes findings of fact, "review is limited to whether the . . . court's findings of fact are supported by competent evidence in the record and whether the conclusions of law are supported by the findings of fact.").

Aeroflex, on the other hand, argues it only needed to present a prima facie case and the district court should have considered the record in the light most favorable to Aeroflex in resolving the motion. To support this argument, Aeroflex cites federal cases, cases from other states, and decisions of this court that apply this standard. The various federal cases on which Aeroflex relies represent "[t]he most common formulation found in the [federal] judicial opinions," which is that the plaintiff "needs only make a prima facie showing when the district judge restricts her review of the Rule 12(b)(2) motion solely to affidavits and other written evidence." 5B Wright, § 1351, pp. 275 & 286-88.

In other words, the authority cited by TIC is a minority view. Further, the rationale of the minority line of cases has been criticized. For example, *Hazard, Jung*, and *In re Vitamins Litigation*

have been called into question because the analysis relied on a Second Circuit Court of Appeals decision that has subsequently been "clarified." See *Heller v. Nicholas Applegate Capital Management*, 498 F. Supp. 2d 100, 107-08 (D.D.C. 2007) (citing *In re Baan Co. Securities Litigation*, 245 F. Supp. 2d 117, 124-25 [D.D.C. 2003]) (criticizing *Hazard* line of cases and, after discussing caselaw from other circuits, adopting " 'factually documented' " prima facie standard). In the clarifying opinion, the Second Circuit held that the preponderance standard applies only if the district court has already held an evidentiary hearing. *Metropolitan Life Ins. Co. v. Robertson-Ceco Corp.*, 84 F.3d 560, 567 (2d Cir. 1996).

The Second Circuit's holding in *Metropolitan Life Ins. Co.* is consistent with most other federal cases. As one court stated, it is only when the court conducts an evidentiary hearing to determine disputed issues of fact and weighs credibility that the burden "quite properly increases" to "the same standard that would obtain if the matter were deferred to trial: the preponderance of the evidence." *Serras*, 875 F.2d at 1214; see 5B Wright, § 1351, p. 287. Under these cases, the fact that discovery has been conducted relating to jurisdiction does not determine the burden; the determining factor is whether there has been an evidentiary hearing. See 5B Wright, § 1351.

If we apply these federal cases, Aeroflex has the burden to establish a prima facie case of jurisdiction. "[F]or purposes of such a review, federal courts will, as they do on other motions under Rule 12(b), take as true the allegations of the nonmoving party with regard to the jurisdictional issues and resolve all factual disputes in his or her favor." 5B Wright, § 1351, pp. 288 & 299.

Several states have adopted the same approach. See, *e.g.*, *Planning Group v. Lake Mathews Mineral*, 226 Ariz. 262, 264 n.1, 246 P.3d 343 (2011) (stating when there is no evidentiary hearing regarding lack of personal jurisdiction, appellate court reviews district court's decision and factual findings de novo, viewing facts in light most favorable to plaintiff but accepting as true uncontroverted facts put forward by defendant); *Home Depot Supply v. Hunter Management, LLC.*, 289 Ga. App. 286, 286, 656 S.E.2d 898 (2008) (where motion decided without evidentiary hearing and

based solely upon the written submissions of the parties, any disputes of fact must be resolved in the light most favorable to the party asserting the existence of personal jurisdiction, and appellate court exercises de novo review); *Evans v. State*, 908 N.E.2d 1254, 1256 (Ind. App. 2009) (" 'The standard of appellate review of rulings on motions to dismiss on jurisdictional grounds depends on whether the trial court resolved disputed facts, and if so, whether the trial court conducted an evidentiary hearing or ruled on a paper record.' . . . Here, the trial court's decision is based on a paper record. Thus, our review is de novo.").

This multistate view is consistent with the decisions of this court. Although this court has not specifically outlined the procedures available to a district court for resolution of a motion to dismiss for lack of personal jurisdiction and has not addressed whether the burden of persuasion varies depending on the procedure, this court has stated:

"Whether jurisdiction exists is a question of law. [Citation omitted.] The plaintiff bears the burden of establishing personal jurisdiction over the defendants. Where, as here, the issue of personal jurisdiction is decided *pretrial on the basis of the pleadings, affidavits, and other written materials, any factual disputes must be resolved in the plaintiff's favor and the plaintiff need only make a prima facie showing of jurisdiction."* (Emphasis added.) *Merriman v. Crompton Corp.*, 282 Kan. 433, 439, 146 P.3d 162 (2006).

In earlier cases, we have also held that " 'when a motion to dismiss for lack of jurisdiction is decided on the basis of affidavits and other written materials, the plaintiff need only make a prima facie showing.' " *In re Hesston Corp.*, 254 Kan. 941, 954, 870 P.2d 17 (1994).

This standard is not only consistent with the common approach in federal courts and in the courts of other states, it is consistent with this court's caselaw in contexts other than personal jurisdiction. We have generally applied a preponderance of the evidence standard where the district court has the power to weigh and evaluate the evidence in the same manner as if it were adjudicating the case on the merits and making findings of fact based on a weighing of the credibility of the evidence. See *In re Estate of Ewers*, 206 Kan. 623, 626, 481 P.2d 970 (1971). In contrast, when presented with affidavits, the parties do not have the ability to test

evidence through cross-examination, and the district court does not have the opportunity to judge credibility and does not take on the role of factfinder. Generally, "[i]n determining whether a *prima facie* showing has been made, the district court is not acting as a factfinder." *Boit v. Gar-Tec Products, Inc.*, 967 F.2d 671, 675 (1st Cir. 1992); see also *Estate of Draper v. Bank of America*, 288 Kan. 510, 517, 205 P.3d 698 (2009) (recognizing general rule that appellate court construes written documents de novo and without regard to district court's ruling); *Cranford v. State*, 39 Kan. App. 2d 12, 18, 176 P.3d 972, *rev. denied* 286 Kan. 1176 (2008) (Malone, J., concurring) (questioning ability to review for substantial competent evidence when the preliminary hearing is nonevidentiary and advocating de novo review).

Further, the view that the evidence must be considered in the light most favorable to the plaintiff (the nonmovant) is consistent with the standard applied to motions filed under K.S.A. 2011 Supp. 60-212(b)(6) where matters outside the pleadings are considered. K.S.A. 2011 Supp. 60-212(d) (summary judgment standard applies); see *Thomas v. Board of Shawnee County Comm'rs*, 293 Kan. 208, 227, 262 P.3d 336 (2011) (when considering summary judgment motion, district judge must consider evidence in light most favorable to nonmoving party); *Wachter Management Co. v. Dexter & Chaney, Inc.*, 282 Kan. 365, 368, 144 P.3d 747 (2006) (K.S.A. 60-212[b][3] motion regarding venue); *Kluin v. American Suzuki Motor Corp.*, 274 Kan. 888, 893, 56 P.3d 829 (2002) (K.S.A. 60-212[b][2] motion regarding personal jurisdiction); see also *Behagen v. Amateur Basketball Ass'n of U.S.A.*, 744 F.2d 731, 733 (10th Cir. 1984), *cert. denied* 471 U.S. 1010 (1985) (if the parties present conflicting affidavits, the court resolves all factual disputes in plaintiff's favor; plaintiff's prima facie showing is sufficient notwithstanding the contrary presentation by defendant); *Environmental Ventures, Inc. v. Alda Services Corp.*, 19 Kan. App. 2d 292, 295, 868 P.2d 540 (1994) ("The court may consider affidavits and documentary evidence in determining whether such a showing has been made but must give the plaintiff the benefit of all factual doubt.").

Hence, we reject TIC's arguments and conclude that, even though there was discovery, when a defendant's K.S.A. 2011 Supp. 60-212(b)(2) motion to dismiss for lack of personal jurisdiction is decided before trial on the basis of the pleadings, affidavits, and other written materials and without an evidentiary hearing, any factual disputes must be resolved in the plaintiff's favor and the plaintiff need only make a prima facie showing of jurisdiction.

Next, TIC argues Aeroflex cannot rely on allegations in the petition to meet this burden. It suggests that because there has been discovery, Aeroflex must present some evidence on every point required to establish the basis for jurisdiction over TIC. This position is not consistent with our decision in *In re Hesston*, where we stated:

" ' "The allegations in the complaint must be taken as true to the extent they are uncontroverted by the defendant's affidavits. If the parties present conflicting affidavits, all factual disputes are resolved in the plaintiff's favor, and the plaintiff's prima facie showing is sufficient notwithstanding the contrary presentation by the moving party." ' [Citations omitted.]" *In re Hesston*, 254 Kan. at 954 (quoting *Rambo v. American Southern Ins. Co.*, 839 F.2d 1415, 1417 [10th Cir. 1988]).

Applying this procedure, the district court could consider the allegations in Aeroflex's petition unless TIC controverts the allegation with an affidavit or other evidence. If TIC controverts the allegation, Aeroflex must come forward with some evidence in rebuttal. Then, the district court considers the evidence in the light most favorable to Aeroflex rather than weighing conflicting evidence.

If a district court's decision regarding a K.S.A. 2011 Supp. 60-212(b)(2) motion to dismiss for lack of personal jurisdiction is appealed, an appellate court reviews the district court's determination under a de novo standard. See *Merriman*, 282 Kan. at 439; *Kluin*, 274 Kan. at 893; *In re Hesston*, 254 Kan. at 954-55; see also 5B Wright, § 1351, p. 314 ("[A] district court's dismissal on jurisdictional grounds is reviewed de novo by the court of appeals for errors of law and with regard to the facts if the district court relied solely upon the pleadings and affidavits.").

Here, although the district court stated Aeroflex needed only make a prima facie showing, it did not indicate that it considered

the facts in the light most favorable to Aeroflex. In fact, the court's findings reflect that it weighed and found persuasive the facts contrary to Aeroflex's position. For example, the district court relied on the "fact the U.S. Army's investigative report rejected the plaintiff's claim." Yet, there is no suggestion that determination has any preclusive effect; it is just evidence.

Recognizing we might conclude the district court weighed evidence, TIC presents an alternative argument justifying the district court's weighing of the evidence. Specifically, TIC suggests that Aeroflex acquiesced in the district court's treatment of the parties' submissions as a proffer of evidence in place of an evidentiary hearing. According to TIC, this acquiescence occurred when Aeroflex objected to TIC's suggestion that an evidentiary hearing should be held and suggested that instead the parties should be allowed to conduct additional discovery. To support its argument that a preponderance of the evidence standard may apply in such a situation, TIC cites *Boit*, 967 F.2d 671.

In *Boit*, the court recognized an evidentiary hearing does not require "evidence [be] 'taken orally in open court.' [Citation omitted.]" *Boit*, 967 F.2d at 676. As support for this conclusion, the court cited the federal equivalent to K.S.A. 60-243(d)—Fed. R. Civ. Proc. 43. The Kansas version states: "When a motion relies on facts outside the record, the court may hear the matter on affidavits or on declarations pursuant to K.S.A. 53-601, and amendments thereto, or may hear it wholly or partly on oral testimony or on depositions." K.S.A. 2011 Supp. 60-243(d).

Despite this provision, the *Boit* court noted there were several considerations relevant to the determination of whether the hearing would be conducted in this manner, and an inappropriate application of these considerations could be an abuse of discretion. Among the factors to be considered is whether issues of credibility must be resolved. *Boit*, 967 F.2d at 676. A second consideration is whether the case could "preclude a party from asserting at trial—and before a jury if one has been demanded—contentions of fact contrary to what the district court found at the pretrial hearing." *Boit*, 967 F.2d at 677. The court noted that this concern was "[e]specially troubling . . . when, for example, long-arm jurisdiction

depends on a finding that the claim on the merits arises out of the defendant's contacts with the forum state." *Boit*, 967 F.2d at 677. The constitutional right to a trial by jury "animates" these concerns, the court concluded. *Boit*, 967 F.2d at 677. A third consideration relates to how the proceeding will impact judicial efficiency, remembering that " '[j]udicial resources may be more efficiently deployed if the court holds but one [preponderance-of-the-evidence] hearing on the contested facts.' [Citation omitted.]." *Boit*, 967 F.2d at 677. A final consideration is whether postponing proof by a preponderance of the evidence until trial will allow proof " 'in a coherent, orderly fashion and without the risk of prejudicing [plaintiff's] case on the merits.' [Citation omitted.]" *Boit*, 967 F.2d at 677. The court concluded: "Concerns about troublesome implications of preponderance-of-the-evidence findings weigh heavily in favor of determining a motion to dismiss on the *prima facie* standard. [Citation omitted.]" *Boit*, 967 F.2d at 677.

In this case, there is no indication the district court gave notice it was conducting a hearing pursuant to K.S.A. 2011 Supp. 60-243(d) or that the parties discussed the possibility. This brings into question whether there was acquiescence. Certainly, we cannot find an explicit statement by Aeroflex in which it acquiesced to such a proceeding. But it is not clear that acquiescence or notice is necessary.

Nevertheless, even if we were to agree with the *Boit* court and conclude the district court conducted a K.S.A. 2011 Supp. 60-243(d) evidentiary hearing without taking any testimony orally in open court, the various factors listed in *Boit* needed to be considered. Our review of the record does not reveal anything suggesting that the district court weighed any factors relating to whether it was appropriate to have conducted this type of hearing. Such a failure is an abuse of discretion. See *Boit*, 967 F.2d at 676-78; *State v. Ward*, 292 Kan. 541, 550, 256 P.3d 801 (2011), *cert. denied* 132 S. Ct. 1594 (2012) (abuse of discretion may occur when court fails to apply correct law or consider ations).

Further, many of the district court's conclusions, such as whether the defendants committed a tortious act and did so in Kansas, depend on the merits of the lawsuit. As we have noted,

the caselaw suggests that in such circumstances the ruling on jurisdiction should most appropriately be deferred until a full trial on the merits. Consequently, we reject TIC's suggestions that the preponderance of evidence standard applies and that the district court was entitled to weigh evidence.

In summary, if TIC presented evidence refuting a point necessary to a finding of jurisdiction, Aeroflex had to respond with some evidence but needed to only make a prima facie showing. In determining if Aeroflex met that burden, the evidence must be considered in the light most favorable to Aeroflex, as the party opposing the motion. With that standard in mind, we begin our de novo review of whether there was jurisdiction.

## LONG-ARM JURISDICTION

Before discussing the specifics of the parties' submissions, it is helpful to examine what Aeroflex had to establish in order to make a prima facie case of personal jurisdiction over TIC. Such a discussion necessarily begins with Aeroflex's claims.

In this regard, we first note that Aeroflex claims Kansas has specific, not general, jurisdiction over TIC. This distinction relates to the two broad types of personal jurisdiction a state can exercise. Specific jurisdiction refers to jurisdiction over causes of action arising from or related to a defendant's actions within a forum state. *Helicopteros Nacionales de Colombia v. Hall*, 466 U.S. 408, 414 n.8, 104 S. Ct. 1868, 80 L. Ed. 2d 404 (1984); *Merriman*, 282 Kan. at 440. The Kansas long-arm statute, K.S.A. 2011 Supp. 60-308(b), defines when Kansas exercises specific jurisdiction over a nonresident defendant. *Kluin*, 274 Kan. at 896. General jurisdiction refers to the power of a state to adjudicate any cause of action involving a particular defendant, regardless of where the cause of action arose. *Helicopteros*, 466 U.S. at 414 n.9; see *Kluin*, 274 Kan. at 895.

Second, Aeroflex alleges that TIC's conduct falls within the scope of Kansas' long-arm statute, K.S.A. 2011 Supp. 60-308(b). Specifically, Aeroflex claims that TIC is subject to the jurisdiction of the courts in Kansas by operation of K.S.A. 2011 Supp. 60-308(b)(1)(A), (B), and (E). The statute provides, in part:

"(1) Any person, whether or not a citizen or resident of this state, who in person or through an agent or instrumentality does any of the following acts, thereby submits the person and, if an individual, the individual's representative, to the jurisdiction of the courts of this state for any claim for relief arising from the act:

(A) Transacting any business in this state;

(B) committing a tortious act in this state;

. . . .

(E) entering into an express or implied contract, by mail or otherwise, with a resident of this state to be performed in whole or in part by either party in this state." K.S.A. 2011 Supp. 60-308(b)(1)(A), (B), and (E).

This court has instructed that this statute is to be liberally construed to allow the exercise of jurisdiction to the outer limits allowed under due process. *Kluin*, 274 Kan. at 894; *Schlatter v. MoComm Futures, Ltd.*, 233 Kan. 324, 329, 662 P.2d 553 (1983). Accordingly, " '[a] case should not be dismissed for want of jurisdiction as being outside the scope of the statute, unless by no reasonable construction of the language could it be said to fall within the statute's terms.' " *J.E.M. Corp. v. McClellan*, 462 F. Supp. 1246, 1250-51 (D. Kan. 1978) (quoting Casad, *Long Arm and Convenient Forum*, 20 Kan. L. Rev. 1, 45 [1971]).

Finally, as it must do, Aeroflex argues the exercise of jurisdiction in this particular case comports with the constitutional guarantee of due process of law. See *Volt Delta Resources, Inc. v. Devine*, 241 Kan. 775, 779, 740 P.2d 1089 (1987); *Schlatter*, 233 Kan. at 329.

## COMMISSION OF TORTIOUS ACT IN KANSAS

In its brief to this court, Aeroflex first contends that K.S.A. 2011 Supp. 60-308(b)(1)(B) can provide the basis for personal jurisdiction on two grounds: (1) TIC (or its agent or coconspirator Filardo) allegedly committed a tortious act in Kansas or (2) TIC's tortious act caused injury in Kansas. As to the first argument, Aeroflex asserts that TIC sought out Filardo while he was in Kansas; that Filardo acquired confidential and proprietary information, including trade secrets, from Aeroflex while he was in Kansas; and Filardo used these trade secrets while working in Kansas and in New Jersey. Aeroflex bases its second argument on its allegation of economic injury resulting at its principal place of business in Wichita.

*Conspiracy to Misappropriate Trade Secrets*

Aeroflex's first argument—that TIC and its agents committed a tortious act—focuses on Aeroflex's claim that TIC and its agents misappropriated trade secrets. To establish this tort at trial, Aeroflex will have to prove the following elements of misappropriation of trade secrets: (1) the existence of a trade secret, (2) a confidential relationship between the parties, (3) disclosures by the plaintiff to the defendant concerning the trade secret, and (4) an unauthorized use of those disclosures by the defendant. See *Koch Engineering Co., Inc. v. Faulconer*, 227 Kan. 813, 826, 610 P.2d 1094 (1980); *Mann v. Tatge Chemical Co., Inc.*, 201 Kan. 326, 332, 440 P.2d 640 (1968). If the actions of a person or that person's "agent or instrumentality" satisfy these elements and some or all of those actions occur in Kansas, the person could be subject to Kansas jurisdiction under K.S.A. 2011 Supp. 60-308(b).

The "agent or instrumentality" clause encompasses civil conspirators. A civil conspiracy claim generally requires a plaintiff to establish " 'concert of action or other facts and circumstances from which the natural inference arises that the unlawful, overt acts were committed in furtherance of a common design, intention, or purpose of the alleged conspirators.' " *Waddoups v. Amalgamated Sugar Co.*, 54 P.3d 1054, 1064 (Utah 2002) (quoting 16 Am. Jur. 2d, Conspiracy § 68 [1998]); see *Stoldt v. City of Toronto*, 234 Kan. 957, 967, 678 P.2d 153 (1984) (stating elements of civil conspiracy, which is an actionable tort). From a jurisdictional standpoint, if one conspirator commits acts in Kansas in furtherance of a conspiracy and that conspirator falls under the long-arm statute, jurisdiction can be obtained as to all conspirators. See *Merriman*, 282 Kan. at 464; *Professional Investors Life Ins. Co. v. Roussel*, 445 F. Supp. 687, 695 (D. Kan. 1978); see generally Althouse, *The Use of Conspiracy Theory to Establish In Personam Jurisdiction: A Due Process Analysis*, 52 Fordham L. Rev. 234 (1983).

In the amended petition filed in this case, Aeroflex pleaded these elements. In response, TIC accepts that Aeroflex can establish some of the elements. Specifically, TIC does not dispute that (1) Aeroflex owns proprietary information, including trade secrets; (2)

there were confidential relationships between Aeroflex and Filardo and Aeroflex and Allen when Filardo and Allen were employed by Aeroflex; and (3) Aeroflex disclosed trade secrets to Filardo and Allen while they were employed by Aeroflex. What TIC disputes is the fourth element; it argues Aeroflex has not demonstrated that TIC, either personally or through its agents or coconspirators, engaged in the unauthorized use of those trade secrets.

The district court agreed with TIC, concluding: "Despite conducting discovery the plaintiff has produced no evidence Filardo misappropriated plaintiff's confidential and proprietary business information while working in Kansas and in fact the U.S. Army's investigative report rejected the plaintiff's claims. The evidence supports a finding Filardo worked on developing TIC's own proprietary software for the bid."

Aeroflex argues this conclusion was reached by a weighing of the evidence rather than by viewing the evidence in the light most favorable to Aeroflex. We agree.

To explain our conclusion, it is necessary to parse the dueling affidavits that were presented. To put those affidavits in perspective, we begin with Aeroflex's verified petition. In it, Aeroflex alleged "upon information and belief" that "TIC could not have modified the design of the TS-4530/UPM to meet the exact form, fit and function requirements of the Mode 5 Upgrade, and in turn successfully and cost-effectively have bid for the Mode 5 Upgrade, without access to Aeroflex Wichita proprietary and confidential information." The next two pages of the amended petition detailed reasons for this conclusion. (Because this portion of the pleading was based on "information and belief" these are mere allegations and not evidence even though the petition was verified under oath.)

TIC countered this allegation with the affidavit of Jeffrey O'Hara, TIC's president and chief operating officer, and with the Army's report. O'Hara explained that the employment offers extended to Filardo and Allen "included specific protections with respect to any disclosure of Aeroflex proprietary technology which have been strictly observed by all parties." To further substantiate that TIC observed the self-imposed restrictions on disclosures,

O'Hara stated: "TIC technical solution proposed to the Army includes a TIC designed interface that does not utilize any proprietary Aeroflex technology." O'Hara also indicated "the TIC technical solution entails a much more radical upgrade . . . than the approach apparently taken by Aeroflex." Finally, O'Hara quoted at length from the report the Army submitted to the GAO in response to Aeroflex's protest.

The Army's report stated, in part, that "Aeroflex's conclusions regarding TIC's capabilities were reached without the benefit of reviewing TIC's proposal. After thoroughly reviewing TIC's proposal, the Army's evaluators found that TIC could fully meet the Army's stated requirements using TIC's own proprietary software currently used in another commercially available test set." As to Aeroflex's contention that TIC must have modified Aeroflex's proprietary hardware, the Army's report indicated that "TIC completely gutted the [unit] and replaced the hardware with a single printed circuit board design utilizing new hardware components." Further, the Army report indicated that "the software TIC utilized is based on software developed internal to TIC and currently being used on similar Mode 5 equipment used elsewhere."

In ruling on the motion to dismiss, the district court gave credence to the Army's report. Aeroflex suggests this reliance was misplaced because the Army's report is not conclusive or binding. In fact, according to Aeroflex, the report was essentially a legal brief submitted by Army counsel to the GAO in defense of the Army's behavior. Further, Aeroflex disputed O'Hara's affidavit and the Army's conclusions with two affidavits, one from Jeffrey M. Gillum, the vice president and general manager of Aeroflex, and one from Guy Hill, the director of the avionics business unit of Aeroflex.

Gillum, in his affidavit, provided sworn statements that presented a prima facie showing of the first three elements of the tort of misappropriation of a trade secret, that is (1) the existence of a trade secret, (2) a confidential relationship between the parties, and (3) disclosures by the plaintiff to the defendant concerning the trade secret. He did so by stating that the "underlying design of the [TS-4530 project] was and is proprietary and confidential in-

formation owned" by Aeroflex and was "developed at great cost over at least the previous seven years," giving Aeroflex "a competitive advantage with respect to the manufacture of the [TS-4530 project] and any upgrades." Gillum further stated that Filardo and Allen were critical to the development, maintenance, and use of this proprietary and confidential information. To support this statement, Gillum provided considerable detail about the job responsibilities each held at Aeroflex and identified the types of information that each had been provided. Gillum concluded: "[V]aluable trade secrets and proprietary information developed at substantial cost" were "wrongfully used by TIC." TIC's access to Filardo's and Allen's knowledge compromised the technology that had been developed by Aeroflex and its predecessor and "destroyed" Aeroflex's competitive advantage, according to Gillum.

Hill, in his affidavit, more directly addressed the disputed fourth element regarding the alleged unauthorized use of Aeroflex's trade secrets by TIC. Some of the statements, like those in the amended petition, were Hill's own conclusions or opinions rather than facts and must be disregarded. See *Ten Mile Indus. Park v. Western Plains Service*, 810 F.2d 1518, 1524 (10th Cir. 1987) (providing that "only the well pled facts of plaintiff's complaint, as distinguished from mere conclusory allegations, must be accepted as true").

But the affidavit also contained Hill's "personal knowledge of the facts and circumstances." For example, regarding the Army's report, Hill explained the procedure Aeroflex followed in bringing its protest. Citing statements made during meetings as well as in Army documents, Hill reported that "[t]he Army assumed that TIC's representations were true, in accordance with the general Army policy of assuming that representations of contractors that it believes to be responsible are true." Further, Hill stated, the Army's report did not substantiate the contention that TIC did not need or use Aeroflex's proprietary and confidential information because the "Army had no possible means of knowing or determining whether TIC had access to [Aeroflex's] trade secrets or proprietary information, [or] whether TIC misappropriated such information prior to, during or subsequent to the preparation of TIC's technical

or price proposal." While this statement is itself conclusory, Hill supported it by looking to the circumstances surrounding the bid process, specifically stating:

"O'Hara's contention [and the Army's conclusion] that TIC's Mode 5 technology was completed and demonstrated before the hiring of Allen and Filardo cannot be true because:

i. We understand that, until that time, TIC had been unable to produce or demonstrate a working prototype in a public forum;

ii. TIC was unable to undergo the Navy's technical evaluation of TIC's Mode 5 technology in accordance with the Navy contract schedule. . . .

iii. TIC was unable to achieve AIMS certification by the Department of Defense prior to the hiring of Allen and Filardo."

Hill provided some technical reasons for his conclusion that TIC did not have the ability to successfully bid without appropriating some of Aeroflex's proprietary information. Additionally, he noted that O'Hara did "not address nor deny the use by TIC of Aeroflex Wichita's proprietary and confidential information in connection with the development of TIC's price proposal to the Army."

These are just a few points made in the affidavits but are sufficient to illustrate that the fourth element is highly contested. Yet, as the district court noted, Aeroflex did not present direct evidence—the metaphorical "smoking gun"—that TIC misappropriated Aeroflex's proprietary information. Nevertheless, when viewed in the light most favorable to Aeroflex, the affidavits provided circumstantial evidence of the disputed fourth element of the tort of misappropriation of proprietary information.

Even with that, however, for jurisdictional purposes Aeroflex must also submit some evidence that the tort occurred in Kansas. That evidence was submitted in the form of Filardo's time sheets, which showed he worked on the upgrade while in Kansas. Filardo is, of course, an alleged coconspirator with the other defendants, and Filardo, as a Kansas resident, is subject to the jurisdiction of a Kansas court. In *Merriam*, this court held: "[I]f one conspirator commits acts in Kansas in furtherance of the conspiracy and that conspirator falls under the act, jurisdiction can be obtained as to all conspirators. [Citation omitted.]" *Merriman v. Crompton Corp.*, 282 Kan. 433, 464, 146 P.3d 162 (2006); see generally Althouse,

*The Use of Conspiracy Theory to Establish In Personam Jurisdiction: A Due Process Analysis*, 52 Fordham L. Rev. 234 (1983).

Granted, once again, Aeroflex did not present the district court with direct evidence of Filardo applying an Aeroflex trade secret to a portion of his work for TIC while at his home in Kansas. Yet, there is direct evidence that Filardo worked on the project from his home in Kansas and there is circumstantial evidence from which a reasonable jury could infer that Filardo used Aeroflex's trade secrets to TIC's benefit when developing TIC's TS-4530 upgrade while in Kansas.

Hence, we conclude that when the evidence is viewed in the light most favorable to Aeroflex, Aeroflex presented a prima facie case of jurisdiction by providing evidence from which it can be inferred that TIC, through its alleged coconspirator Filardo, acted in Kansas to misappropriate Aeroflex's trade secrets. As a result, there was a prima facie case of personal jurisdiction over TIC pursuant to K.S.A. 2011 Supp. 60-308(b)(1)(B).

Having reached this conclusion, we need not address Aeroflex's alternative arguments for jurisdiction. It is not necessary for a party to establish multiple prima facie grounds for jurisdiction; one is sufficient, assuming other aspects of due process are satisfied.

### DUE PROCESS

Given our conclusion that Aeroflex has made a prima facie showing that TIC, through its alleged coconspirator Filardo, committed a tortious act in Kansas, we must now examine whether Aeroflex made a prima facie showing that TIC's contacts with Kansas were strong enough to satisfy the *International Shoe* due process test and, thereby, justify the exercise of personal jurisdiction. See *International Shoe Co. v. Washington,* 326 U.S. 310, 66 S. Ct. 154, 90 L. Ed. 95 (1945). This court summarized the *International Shoe* test in *Merriman* by stating:

"When specific jurisdiction is asserted under the Kansas long arm statute, K.S.A. 60-308(b), due process requires that the nonresident defendant have certain minimum contacts with the forum in order for the exercise of jurisdiction to be constitutional. In considering whether the corporation's minimum contacts meet this standard, courts should consider the quality and nature of the defendant's activity in determining whether it is reasonable and fair to require defense

in the forum, rendering jurisdiction consistent with traditional notions of fair play and substantial justice. Due process requires a demonstration that the nonresident defendant purposely established minimum contacts with the forum state, thereby invoking the benefits and protections of its laws." *Merriman*, 282 Kan. 433, Syl. ¶ 15.

*Minimum Contacts*

First, we consider the nature and extent of the defendant's activities in Kansas. The focus of this inquiry must be on the defendant's activities because a plaintiff's unilateral activities in the forum state cannot be used to create jurisdiction over the defendant. Instead, it is essential there be some act by which the defendant purposely avails itself to the privilege of conducting activities within the forum state thereby invoking the benefits and protections of its laws. "The purposeful availment requirement ensures that a defendant will not be haled into a jurisdiction solely as a result of random, fortuitous, or attenuated contacts." *Merriman*, 282 Kan. 433, Syl. ¶ 18; see *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 474, 105 S. Ct. 2174, 85 L. Ed. 2d 528 (1985); *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297, 100 S. Ct. 559, 62 L. Ed. 2d 490 (1980).

Aeroflex essentially argues that TIC intentionally induced Filardo, a Kansas resident, to breach his nondisclosure agreement with Aeroflex, also a Kansas resident, by pursuing Filardo as a potential employee, by hiring him, and by directly competing with Aeroflex and hindering Aeroflex's ability to compete. In addition, Aeroflex argues that Filardo's alleged misappropriation of trade secrets was in furtherance of a conspiracy between Filardo and TIC to cause damage to Aeroflex, which means the conspiracy was directed at causing injury in Kansas.

In making these arguments, Aeroflex relies on the United States Supreme Court's decision in *Calder v. Jones*, 465 U.S. 783, 104 S. Ct. 1482, 79 L. Ed. 2d 804 (1984). Under *Calder*, "an act done outside the state that has consequences or effects within the state will suffice as a basis for jurisdiction in a suit arising from those consequences if the effects are seriously harmful and were intended or highly likely to follow from the nonresident defendant's

conduct. [Citations omitted.]" *Guidry v. U.S. Tobacco Co., Inc.*, 188 F.3d 619, 628 (5th Cir. 1999).

Application of the test in *Calder* meant that a California court could exercise jurisdiction over two Florida employees of a tabloid magazine who wrote and edited an allegedly libelous article about the California plaintiff, who was an actor. The United States Supreme Court concluded that the defendants knew the article's injurious effects would be felt by the plaintiff in California and had therefore "expressly aimed" their intentional and allegedly tortious conduct at the forum state. *Calder*, 465 U.S. at 789-90. The Court noted that the focal point of the article itself was also California, because it was drawn primarily from California sources and pertained to an actor whose career was centered in California. *Calder*, 465 U.S. at 788-89. Thus, " ' "[t]he key to *Calder* is that the effects of an alleged intentional tort are to be assessed as *part* of the analysis of the defendant's relevant contacts with the forum." ' [Citations omitted.]" *Panda Brandywine Corp. v. Potomac Elec. Power Co.*, 253 F.3d 865, 869 (5th Cir. 2001).

As aptly pointed out by TIC in its appellate brief, the "effects" test in *Calder* does not, however, replace the need to demonstrate minimum contacts that constitute purposeful availment, that is conduct by the nonresident defendant that invoked the benefits and protections of the state or was otherwise purposefully directed toward a state resident. See *Panda Brandywine Corp.*, 253 F.3d at 869; see also *Revell v. Lidov*, 317 F.3d 467, 473 (5th Cir. 2002) (Under *Calder*, "the plaintiff's residence in the forum, and suffering of harm there, will not alone support [personal] jurisdiction."); *Far West Capital, Inc. v. Towne*, 46 F.3d 1071, 1078 (10th Cir. 1995) ("[C]ourts finding personal jurisdiction based upon an intentional tort analysis have not created a per se rule that an allegation of an intentional tort creates personal jurisdiction. Instead, they have emphasized that the defendant had additional contacts with the forum.").

TIC argues that it did not avail itself of the protections of Kansas law. At most, it argues, its only contact with Kansas was its recruitment of a Kansas resident, Filardo. Certainly, it "did not direct tortious activity at Kansas," according to TIC's argument. To sup-

port its contention that merely hiring a Kansas resident from a competitor is not enough to establish jurisdiction, TIC cites *Arch Aluminum & Glass Co., Inc. v. Haney*, 964 So. 2d 228 (Fla. Dist. App. 2007).

The *Arch Aluminum* case arose from a claim of misappropriation of confidential information by Matthew Hale, the former national sales manager for Arch Aluminum, a Florida corporation. During his employment with Arch Aluminum, Hale gained access to confidential information, including client lists, sales projections, prior sales data, business plans, and financial statements. Hale had been informed, through the employee handbook, that such information was the property of Arch Aluminum. Soon after beginning new employment with a Nevada competitor, however, Hale released some of Arch Aluminum's confidential information to his new employer. Arch Aluminum brought suit against Hale and the new employer, asserting claims for, among other things, misappropriation of trade secrets.

The Florida appellate court held that the distribution of the confidential information occurred in Nevada and Arizona and, therefore, the acts of the defendants did not result in a tortious act in Florida. As found by the Florida court: "Even if Arch suffered damage, it would have been a loss of western clients and the reduction of revenues from its Phoenix operation," not from Florida. *Arch Aluminum*, 964 So. 2d at 234. Consequently, the court concluded that neither the long-arm statute nor due process considerations were satisfied; therefore, there was no personal jurisdiction. *Arch Aluminum*, 964 So. 2d at 233-35.

Relying on this analysis, TIC suggests the situs of Aeroflex's injury, if any, is New Jersey where TIC developed its product. Aeroflex, on the other hand, argues the situs of the injury is in Kansas where the economic impact of the misappropriation was felt. Aeroflex's position is supported by the holdings of many courts that explain the situs of injury is the place where the plaintiff suffers injury via loss of business. *American Eutec. Weld. Alloys S. Co. v. Dytron Alloys Corp.*, 439 F.2d 428, 432-35 (2d Cir. 1971) (holding that Michigan corporation did not commit tortious act causing injury in New York where the Michigan corporation induced the

New York plaintiffs' experienced sales employees to leave plaintiffs and use confidential information to woo away plaintiffs' customers in Kentucky and Pennsylvania; the situs of injury was where plaintiffs lost business); *Spectacular Promotions, Inc. v. Radio Station WING*, 272 F. Supp. 734, 737 (E.D.N.Y. 1967) (stating that the place where plaintiff lost business would normally be a forum reasonably foreseeable by a tortfeasor); *cf. Sybron Corp. v. Wetzel*, 46 N.Y.2d 197, 204-06, 385 N.E.2d 1055 (1978) (finding injury to be felt in New York where defendant's out-of-state act of misappropriation of trade secrets threatened significant loss of New York sales).

Again, however, this economic effect is not sufficient if there are not other purposeful contacts, and TIC makes another argument as to why its contact with Filardo is not sufficient to meet the test. This argument responds to Aeroflex's position that the fact Filardo worked for TIC from his home in Kansas is sufficient for due process purposes. TIC counters this argument by suggesting that this was a personal choice of Filardo and not something TIC planned or proposed; in other words, TIC did not purposefully avail itself of the Kansas location. The district court agreed with this analysis, citing two cases—*Lucachick v. NDS Americas, Inc.*, 169 F. Supp. 2d 1103 (D. Minn. 2001), and *Adams v. Riverview Healthcare Ass'n.*, No. A3-02-135, 2003 WL 1456442 (D.N.D. 2003) (unpublished opinion).

Both of these cases stand for the proposition that the decision of the agent or employee to work from home in the forum state does not generally bind the nonresident entity to personal jurisdiction in that state, where the purpose of the arrangement is merely for the agent's personal convenience. As the *Adams* court stated, because the employer did not require the employee to live in the forum state of North Dakota and did not gain anything from allowing the employee to work in North Dakota, the employer's contact with the state was only the result of the employee's "unilateral activity of choosing to live in North Dakota, and it cannot be said that [the employer] purposefully directed its activities toward North Dakota by allowing Adams to work out of his home." *Adams*, 2003 WL 1456442, at *3. Likewise, TIC did not, it argues,

purposefully invoke the privileges and benefits of Kansas law by acceding to Filardo's request to work from home for his own personal reasons.

What TIC ignores is Aeroflex's allegation that TIC conspired with Filardo to misappropriate Aeroflex's proprietary interests and continued that conspiracy even while Filardo continued to work on the project from Kansas. In other words, even if TIC did not purposefully avail itself of the protection of Kansas laws by requiring Filardo to work in Kansas, it purposefully availed itself by joining in and acting in furtherance of a conspiracy even after it knew that one actor had chosen to act in Kansas in furtherance of the conspiracy. This purposeful action directed at Kansas and partially performed in Kansas distinguishes *Lucachick*, *Adams*, and *Arch Aluminum*.

The principal point of distinction arises because courts, including those in Kansas, have concluded that knowledge of and voluntary participation in a conspiracy with other individuals who have a physical, in-state presence does not offend due process and allows the court to extend personal jurisdiction over a nonresident who may otherwise lack specific, individualized contacts with the forum state. See *Merriman*, 282 Kan. 433, Syl. ¶ 19 ("Because the conspiracy theory gives one subject to personal jurisdiction in a forum the ability to avoid in advance being subject to suit in the forum, it satisfies the fundamental due process requirement that a defendant can be involuntarily subjected to the personal jurisdiction of a forum only if the defendant purposefully avails itself of the privilege of conducting activities in the forum state."); see also *Istituto Bancario Italiano v. Hunter Eng. Co.*, 449 A.2d 210, 225 (Del. 1982) ("[A] defendant who has so voluntarily participated in a conspiracy with knowledge of its acts in or effects in the forum state can be said to have purposefully availed himself of the privilege of conducting activities in the forum state, thereby fairly invoking the benefits and burdens of its laws."); *Rudo v. Stubbs*, 221 Ga. App. 702, 703-04, 472 S.E.2d 515 (1996) (recognizing that coconspirators are agents of each other for purposes of personal jurisdiction when acting in furtherance of conspiracy but requiring

specific facts of activity purposefully directed toward Georgia residents).

Because TIC's tortious contacts were through an agent and alleged coconspirator who performed tortious acts in Kansas, a more analogous case is *Thermal Components Company v. Griffith*, 98 F. Supp. 2d 1224 (D. Kan. 2000). There, after resigning from their positions at Thermal Components, the defendants became affiliated in various professional capacities with codefendant Thermotech, a Missouri corporation. Thermal Components, a Kansas corporation, sued its former employees and Thermotech in Kansas state court, alleging misappropriation of trade secrets, interference with business expectancies, breach of fiduciary duty owed to the employer, and conversion.

The defendants removed the case to Kansas federal district court and moved to dismiss, in part for lack of personal jurisdiction. With respect to the corporate defendant, Thermal Components argued that personal jurisdiction could be exercised under the "agent or instrumentality" language of the Kansas long-arm statute. The federal district court found that the defendants' tortious activities, including misappropriation of trade secrets, subjected them to the statute and further found that "the injuries for which plaintiff seeks redress, allegedly caused by the defendants' conduct, occurred in Kansas for purposes of the 'tortious act' provision of the long-arm statute." *Thermal Components*, 98 F. Supp. 2d at 1228.

With regard to due process requirements, the federal district court concluded that, taking the facts as alleged by the plaintiff as true, Thermal Components made the required prima facie showing that the defendants' contacts with Kansas were sufficient to subject them to personal jurisdiction in this state:

"By misappropriating the trade secrets to which the individual defendants became privy only as a result of their employment by the plaintiff, and by using that information to interfere with Thermal Components' pre-existing and future contractual relations, defendants' purposeful tortious conduct toward, as well as the individual defendants' previous employment relationship with, a Kansas resident establishes the requisite contacts with the forum state. [Citations omitted.] . . .

"Moreover, if the facts are as represented by plaintiff, the defendants' use of confidential information gained as a result of the defendants' employment with the plaintiff to divert clients from Thermal Components constitutes a breach of

the duty of loyalty, a duty arising from the individual defendants' previous agency relationship with the plaintiff. As former employees of plaintiff, the individual defendants were surely aware that any deleterious effects resulting from the acts complained of here would certainly be realized by the plaintiff in its home state. As an entity capitalizing on the knowledge held by plaintiff's former employees, defendant Thermotech should have been aware that its role in benefitting from the individual defendants' tortious activities would harm plaintiff, a Kansas resident, and that the derivation of such benefits at plaintiff's expense would require it to defend itself in the plaintiff's forum state. Thus, the court concludes that the defendants' contacts with this state are sufficient to subject them to the jurisdiction of this court." *Thermal Components*, 98 F. Supp. 2d at 1229-30.

See *Equifax Services, Inc. v. Hitz*, 905 F.2d 1355, 1358-60 (10th Cir. 1990) (former branch manager had sufficient minimum contacts with forum state by virtue of employment relationship with Kansas employer; action to enforce covenant not to compete); *Sprint Corp. v. DeAngelo*, 12 F. Supp. 2d 1184, 1186-88 (D. Kan. 1998) (assertion of jurisdiction in Kansas over Virginia former employee did not violate due process).

Many of the points noted by the *Thermal Components* court apply to TIC's and Filardo's actions as well. Aeroflex's trade secrets were allegedly revealed to TIC in both Kansas and New Jersey. See *Union Carbide Corp. v. UGI Corp.*, 731 F.2d 1186, 1189-90 (5th Cir. 1984) (personal jurisdiction existed over defendant for claim of misappropriation of trade secrets because part of tort was committed in forum). And, if Aeroflex's allegations are true, TIC sought out Aeroflex's employees to interfere with TIC's Kansas competition knowing one of them, Filardo, was a Kansas resident and remained a Kansas resident. It was foreseeable that this alleged purposeful contact by TIC with a Kansas resident and the alleged agreement to use Aeroflex's trade secrets would cause harm to Aeroflex in Kansas and give rise to TIC being forced to defend itself in a Kansas forum. Under these circumstances, TIC purposefully established minimum contacts with Kansas and invoked the benefits and protections of Kansas law.

*Reasonableness—Traditional Notions of Fair Play
and Substantial Justice*

Finally, we must consider the second prong of the *International Shoe* due process requirement and determine whether the exercise of personal jurisdiction is reasonable or whether the exercise of jurisdiction offends " 'traditional notions of fair play and substantial justice." ' [Citations omitted.]" *Asahi Metal Industry Co. v. Superior Court*, 480 U.S. 102, 113, 107 S. Ct. 1026, 94 L. Ed. 2d 92 (1987). Factors to consider in making this evaluation include: "the quality, nature and extent of the activity in the forum state, the relative convenience of the parties, the benefits and protection of the laws of the forum state afforded the respective parties, and the basic equities of the situation. [Citations omitted.]" *White v. Goldthwaite*, 204 Kan. 83, 88, 460 P.2d 578 (1969); see *OMI Holdings, Inc. v. Royal Ins. Co. of Canada*, 149 F.3d 1086, 1095 (10th Cir. 1998) (citing *Asahi*, 480 U.S. at 113, and factors such as burden on defendant, forum state's interest in resolving the dispute, plaintiff's interest in receiving convenient and effective relief, the interstate judicial system's interest in obtaining the most efficient resolution of controversies, and the shared interest of the several states in furthering fundamental substantive social policies). This reasonableness inquiry is conducted on a sliding scale: " '[T]he weaker the plaintiff's showing on [minimum contacts], the less a defendant need show in terms of unreasonableness to defeat jurisdiction.' [Citation omitted.]" *Pro Axess, Inc. v. Orlux Distribution, Inc.*, 428 F.3d 1270, 1280 (10th Cir. 2005).

In the present case, TIC argues that the exercise of personal jurisdiction would be unreasonable, that requiring TIC to defend this case in Kansas would create a great burden, and that Kansas has only a "nominal interest" in this dispute. TIC contends that New Jersey is the most efficient forum in which to litigate the parties' disputes, especially because Aeroflex has corporate counsel out of New York who has been admitted pro hac vice in this case.

The district court agreed with TIC's position and found:

"The burden on the Defendant TIC would be considerable in that virtually none of its witnesses (employees and government) and exhibits is in Kansas and it has no office or presence in Kansas. Lead counsels for both parties are from the east

coast, not Kansas. While the forum state (Kansas) has an interest in resolving this dispute, that interest is no greater than the defendant's home state (New Jersey) or the state in which the bid was submitted (Alabama). The plaintiff has not shown it cannot receive convenient and effectual relief in New Jersey or Alabama. The interstate judicial system's interest in obtaining the most efficient resolution of this controversy favors the forum in New Jersey, the location of most of the witnesses and exhibits of the alleged tortious acts (misappropriation of trade secrets), the location or close location of lead counsel, and the location of the alleged illegal acts. Furthermore, neither Kansas, New Jersey nor any other state have a greater interest in furthering social policies against the alleged wrongs committed by TIC; the states appear to share equally in that interest. Given the weak showing of minimal contacts (if any) by Aeroflex, the less TIC must show in terms of unreasonableness to defeat due process."

Aeroflex urges this court not to follow such a "misguided notion" of unfairness, arguing that Kansas courts must not close their doors to its residents on the premise that it is " 'unfair' to force an interstate pirate to answer in Kansas for the injuries he intentionally inflicts on Kansans."

As we evaluate these positions, we agree with many of the points made by the district court, primarily those relating to the lack of TIC's presence in Kansas means most of its witnesses will be from out-of-state. Yet, we disagree with other points.

Most significantly, the district court's starting point for its sliding scale rested on the court's view of the weak or nonexistent nature of TIC's contacts. In contrast, we apply this sliding scale with the view that, if Aeroflex is able to prove the case for which it has made a prima facie showing, it will have established significant contacts. It will have shown that TIC purposefully sought out a Kansas resident with the purpose of stealing proprietary information from a Kansas business; formed a conspiracy with Filardo, a Kansas resident, and Allen, who had a contract with a Kansas business and breached duties related to the contract; and continued a conspiracy with a person it knew to be residing in Kansas and committing tortious acts in Kansas. These are strong contacts and significant examples of TIC's purposeful availment of the privilege of conducting activities in Kansas. See *Chem-Trol, Inc. v. Christensen*, No. 09-2024-EFM, 2009 WL 1044613, at *2 (D. Kan. 2009) (unpublished opinion) (finding Iowa corporation started by Kansas

corporation's former employee, who was subject to noncompete agreement, was subject to jurisdiction under tortious act provision of Kansas long-arm statute; tortious interference with customer contracts); *Guang Dong Light Headgear Factory Co., Ltd. v. ACI International, Inc.*, No. 03-4165-JAR, 2007 WL 1341699, at *5 (D. Kan. 2007) (unpublished opinion) (former employee of a Kansas business incorporated in Texas with the purpose of competing with Kansas business; held that even though Texas corporation itself did not act in the state of Kansas, its agent's and coconspirator's activities were attributable to corporation, and corporation reasonably should have foreseen that it would be required to defend itself in a Kansas court).

Weighing the burden on TIC against the backdrop Aeroflex may eventually prove regarding TIC's relationship with Filardo, its conspiracy to steal proprietary information, and the actions in Kansas to further that conspiracy, we conclude that the burden imposed on TIC is not unduly onerous.

Another significant factor is the recognition that " '[s]tates have an important interest in providing a forum in which their residents can seek redress for injuries caused by out-of-state actors.' " *Pro Axess*, 428 F.3d at 1280 (quoting *OMI Holdings*, 149 F.3d at 1096). Further, each state has an interest in resolving disputes that involve its own laws. Because Aeroflex is located in Kansas, and the case involves the application of Kansas law, the state of Kansas has an interest in providing Aeroflex with a forum to litigate.

The factors concerning Aeroflex's interest in convenient and effective relief also weigh in favor of exercising jurisdiction. Further, there is no obvious reason why Kansas' exercise of jurisdiction would affect the substantive policy interests of any other state. Accordingly, we conclude Kansas courts may reasonably exercise personal jurisdiction over TIC; traditional notions of fair play and substantial justice will not be offended.

In sum, when the evidence presented on the motion to dismiss is viewed in the light most favorable to Aeroflex, Aeroflex has presented a prima facie case that TIC, through its agents and instrumentalities, committed a tortious act in Kansas and is therefore

subject to jurisdiction under K.S.A. 2011 Supp. 60-308(b)(1)(B). Exercise of that jurisdiction does not offend due process.

The district court's dismissal for lack of personal jurisdiction is reversed and remanded.