No. 100,556

GREGORY A. SHIPE and CHARLEE G. (GLINKA) SHIPE, *Appellants*,
v. PUBLIC WHOLESALE WATER SUPPLY DISTRICT NO. 25, a
Quasi-municipal Corporation, *Appellees*.

(210 P.3d 105)

Opinion filed June 26, 2009.

*Bradley R. Finkeldei*, of Stevens & Brand, L.L.P., of Lawrence, argued the cause, and *Burke W. Griggs*, of the same firm, was with him on the briefs for appellants.

*Gary H. Hanson*, of Stumbo Hanson, L.L.P., of Topeka, argued the cause, and *Todd A. Luckman*, of the same firm, was with him on the brief for appellee.

The opinion of the court was delivered by

LUCKERT, J.: This appeal raises two questions. First, do landowners who do not hold rights to the water appurtenant to their land have standing to enjoin a water district that is seeking a temporary easement to drill test wells on the landowners' property? Second, when only a temporary easement is being sought, has the landowner presented a ripe case or controversy regarding the question of whether a water district can condemn water rights or, alternatively, property for the purpose of providing permanent access to a point of diversion for the use of water rights?

We conclude that the landowners have standing to object to a temporary easement on their property, although they do not have standing to object to the condemnation of water rights which they do not possess. Nevertheless, the question of whether a water district can condemn water rights or property for the purpose of providing permanent access to a point of diversion for the use of water rights is not ripe for decision in this case because: (a) The landowners in this action do not hold the water rights, (b) the current eminent domain proceeding does not seek a permanent easement for a point of diversion, (c) it is not known if the water district will ever seek to condemn the property for the purpose of obtaining

legal access to a point of diversion, or (d) if in the future the water district seeks a permanent easement for a point of diversion, it is not known if the current landowners will still possess an interest in the land or if a purchase could be successfully negotiated. We, therefore, affirm the district court's order of dismissal.

## *Facts and Procedural Background*

Public Wholesale Water Supply District No. 25 (District 25) is a large water wholesaler comprised of three rural water districts— Osage County Rural Water District No. 5, Douglas County Rural Water District No. 2, and Douglas County Rural Water District No. 5. Wholesale water supply districts are authorized by the Public Wholesale Water Supply District Act, K.S.A. 19-3545 *et seq.* (Wholesale Water Supply Act).

The Wholesale Water Supply Act also defines the purposes and powers of a wholesale water district. As relevant to this appeal, these include the power to secure a source of water on a scale larger than is feasible for a single public water supply district, municipality, or publicly or privately owned water distribution company and the power to sell that water at wholesale to public water supply districts, municipalities, and publicly and privately owned water distribution companies. K.S.A. 19-3545(a), (b). To pursue these purposes, a public wholesale water supply district is authorized to purchase and construct wells, pumping stations, and pipelines. See K.S.A. 19-3552(6), (7). Also, it has the power "to acquire land and interests in land by gift, purchase, exchange or eminent domain, such power of eminent domain to be exercised within or without the boundaries of the district in accordance with provisions of K.S.A. 26-501 [Eminent Domain Procedure Act], and amendments thereto." K.S.A. 19-3552(5).

In the exercise of these powers, District 25 filed three separate applications with the Kansas Department of Agriculture, Division of Water Resources (DWR), in which it sought permits to appropriate groundwater rights in the Kansas River Basin between Lawrence and Eudora for its beneficial use. As part of this process, District 25 sought to obtain access to three different tracts of land for the purpose of drilling test wells to evaluate the quality and

quantity of the water supply and to determine a final well location. One of the three proposed points of diversion is the farm property of Gregory Shipe and Charlee Shipe (the Shipes), which is located outside the boundaries of District 25.

After unsuccessfully attempting to negotiate temporary easements with the Shipes and the two other landowners, District 25 filed a petition for eminent domain. In the petition, District 25 sought temporary access to the three tracts of land for a period of 120 days in order "to drill, operate, inspect, pump, and test water from and plug, test holes and test water wells on that land."

The district court found that District 25 had the power of eminent domain and that the taking was necessary to its lawful corporate purposes. Consequently, the court allowed District 25 to "have temporary 'Drilling Easements' " and "temporary 'Access Easements,' " as described in the district court's order, for a period of 120 days from the date of payment to the clerk of the district court. In addition, the court appointed three appraisers to ascertain the values of the easements and "to determine the damages to the interested parties resulting from the subject taking."

On the same day as the district court entered these orders, the Shipes filed a motion for a temporary injunction in the eminent domain proceeding. They also filed this separate action seeking an injunction. See *Schuck v. Rural Telephone Service Co.*, 286 Kan. 19, 25, 180 P.3d 571 (2008) ("The condemnee has no right to litigate outside issues in eminent domain proceedings. [Citation omitted]. The right to exercise the power of eminent domain and to determine other issues such as the necessity and the extent of the taking may only be litigated in a separate civil action, usually in an action for injunction.") (citing *Miller v. Bartle*, 283 Kan. 108, 116-17, 150 P.3d 1287 [2007]).

While the injunction requests remained unresolved, the court-appointed appraisers filed their report, and District 25 submitted the funds to the clerk as required. The amount of damages to the Shipes' property caused by the partial taking was appraised to be $1,310. The Shipes returned the appraisers' award to the district court, however, refusing to acquiesce in the damages award.

Subsequently, the district court considered the Shipes' request for a temporary injunction and a motion to dismiss that had been filed by District 25. In their legal arguments, the Shipes asserted that District 25 does not have the power to condemn their property. They reasoned that District 25's underlying purpose for initiating the condemnation action was to eventually acquire the water rights related to their land. Yet, they argued K.S.A. 19-3552(5), which allows water supply districts to "acquire land and interests in land" by eminent domain, does not extend to water rights. To support their position, the Shipes focused on language in the Kansas Water Appropriation Act (KWAA), specifically K.S.A. 2008 Supp. 82a-701(g), which refers to a "water right" as a "real property right." Noting that a water district's power of eminent domain is limited to interests in land, the Shipes argued that a real property right is different from an interest in land. In addition, they argued that the water rights sought to be obtained by District 25 do not qualify as a "source of water." An alternative argument was also presented as the Shipes noted that a water district may obtain water rights only by gift, purchase, exchange, or eminent domain, and District 25's application for water rights that was filed with the DWR fell into none of these categories.

After conducting an evidentiary hearing on the Shipes' request for a temporary injunction, the district court denied the injunction and granted District 25's motion to dismiss. In a memorandum decision, the district court found that the Shipes had failed to establish any of the factors required to be shown before a court can grant temporary injunctive relief—*i.e.,* they failed to establish (1) a substantial likelihood of success on the merits; (2) a reasonable probability of irreparable future injury; (3) the inadequacy of remedies at law; (4) a threatened injury that outweighs whatever damages the proposed injunction might cause; and (5) an injunction would not be adverse to the public interest. See *Schuck,* 286 Kan. at 24; *Steffes v. City of Lawrence,* 284 Kan. 380, 395-96, 160 P.3d 843 (2007).

Addressing the merits of the Shipes' contentions, the district court indicated that the threshold issue was whether District 25 has the power of eminent domain over water rights. The court

acknowledged that District 25 did not actually seek to condemn water rights on the Shipes' property; rather, District 25 sought only to obtain temporary easements for drilling test wells and evaluating the quality and quantity of available water. But the court reasoned that District 25 "needs to drill test wells only if it ultimately has the right to condemn the Shipes' right to use that water." Examining the language of K.S.A. 19-3552 and relying on the analysis in Peck & Weatherby, *Condemnation of Water & Water Rights in Kansas*, 42 Kan. L. Rev. 827, 832 (1994), the district court found that District 25 has the power to condemn water rights.

Subsequently, the district court granted the Shipes' motion for a temporary injunction pending the outcome of this appeal. According to the Shipes' brief before this court, they "appeal the denial of the injunction, on the grounds that the [Wholesale Water Supply] Act does not grant the District the power to acquire water rights by eminent domain." The Shipes contend that because District 25 lacks the power to obtain the groundwater rights to their property, District 25 should be enjoined from obtaining temporary drilling and access easements.

District 25 responds with a number of arguments, including the one on which we resolve this action, *i.e.*, that the district court lacked jurisdiction to determine whether the water district has the power to condemn a water right because the Shipes lack standing and the issues they present are not ripe.

## Standard of Review

Whether jurisdiction exists is a question of law over which this court's scope of review is unlimited. *Bruch v. Kansas Dept. of Revenue*, 282 Kan. 764, 774, 148 P.3d 538 (2006).

Kansas courts are constitutionally without authority to render advisory opinions, and a court's jurisdiction to issue an injunction is dependent upon the existence of an actual case or controversy. *State ex rel. Morrison v. Sebelius*, 285 Kan. 875, 897, 179 P.3d 366 (2008); *312 Education Ass'n v. U.S.D. No. 312*, 273 Kan. 875, 882, 47 P.3d 383 (2002); *Sheila A. v. Finney*, 253 Kan. 793, Syl. ¶ 1, 861 P.2d 120 (1993). As part of the Kansas case-or-controversy requirement in an injunction action, courts require: (a) parties

must have standing; (b) issues must not be moot; (c) issues must be ripe, having taken fixed and final shape rather than remaining nebulous and contingent; and (d) issues may not present a political question. *State ex rel. Morrison*, 285 Kan. at 896-97, 906 (discussing requirements and differing degrees of rigor to be applied in actions under K.S.A. 60-801 and K.S.A. 60-1701); *U.S.D. No. 503 v. McKinney*, 236 Kan. 224, 236, 689 P.2d 860 (1984) (for an injunction to issue there must be a threatened injury).

These factors were argued only indirectly by the parties in proceedings before the district court and, as a result, were not discussed in the district court's memorandum decision. Nevertheless, subject matter jurisdiction is a question that may be raised at any time, whether for the first time on appeal or even on an appellate court's own motion. See *Williams v. Lawton*, 288 Kan. 768, 778, 207 P.3d 1027 (2009); *Flores Rental v. Flores*, 283 Kan. 476, 480-81, 153 P.3d 523 (2007).

## Standing

District 25 focuses most of its jurisdictional arguments on standing. Specifically, District 25 argues that the Shipes lack standing to assert arguments pertaining to groundwater rights because the Shipes own neither the water nor the water rights sought to be obtained by District 25.

This court has stated that standing is "one of the most amorphous concepts in the entire domain of public law. [Citation omitted.]" *Harrison v. Long*, 241 Kan. 174, 176, 734 P.2d 1155, *appeal dismissed* 484 U.S. 804 (1987); see *Board of Sumner County Comm'rs v. Bremby*, 286 Kan. 745, 750, 189 P.3d 494 (2008). Nevertheless, it is clear that if a party does not have standing to challenge an action or to request a particular type of relief, then "there is no justiciable case or controversy" and the suit must be dismissed. *Kansas Bar Ass'n v. Judges of the Third Judicial Dist.*, 270 Kan. 489, 490, 14 P.3d 1154 (2000). We have also indicated that when a person who does not have standing to file suit asks for relief, it is tantamount to a request for an advisory opinion. 270 Kan. at 491. Advisory opinions are an executive, not a judicial, power, and

as a result Kansas courts do not have jurisdiction to issue advisory opinions. *State ex rel. Morrison*, 285 Kan. at 885, 889-91, 898.

Turning to the specifics of this case, District 25's arguments that the Shipes lack standing is based on general principles regarding the ownership of water rights. In Kansas, the rights to water are governed by the KWAA, K.S.A. 82a-701 *et seq.* Subsequent to the KWAA's enactment in 1945, Kansas has followed the prior appropriation doctrine in assigning groundwater rights. Those who were current users when KWAA was enacted were required to apply for vested rights, and new users were allowed to obtain rights through a water use permit. *Hawley v. Kansas Dept. of Agriculture*, 281 Kan. 603, 614, 132 P.3d 870 (2006); see Peck, *Title and Related Considerations in Conveying Kansas Water Rights*, 66 J.K.B.A. 38 (Nov. 1997).

Through subsequent amendments, the Kansas Legislature established that a water right, whether vested or appropriated, is "a real property right appurtenant to and severable from the land on or in connection with which the water is used and such water right passes as an appurtenance with a conveyance of the land by deed, lease, mortgage, will, or other voluntary disposal, or by inheritance." K.S.A. 2008 Supp. 82a-701(g). Further, in Kansas, a water right does not constitute ownership of the water itself; it is only a usufruct, a right to use water. K.S.A. 82a-707(a); Peck, 66 J.K.B.A. at 39. In addition, the KWAA dedicates water resources to the use of the public, prohibits water rights in excess of the reasonable needs of the appropriators, and subjects water rights to the principle of beneficial use. K.S.A. 2008 Supp. 82a-701(f); K.S.A. 82a-702; K.S.A. 82a-706; K.S.A. 82a-707(a), (c), (e); K.S.A. 2008 Supp. 82a-711; K.S.A. 2008 Supp. 82a-718; K.S.A. 82a-733; see *Hawley*, 281 Kan. at 614-15; Peck, *Property Rights in Groundwater—Some Lessons from the Kansas Experience*, 12 Kan. J.L. & Pub. Pol'y 493, 497 (Spring 2003).

The effect of these principles is that the Shipes do not own the rights to the water appurtenant to their land simply because they own the land. To hold water rights, they must have applied for and been granted the rights. According to Gregory Shipe's testimony at the hearing on the motion for a temporary injunction, the Shipes

had filed an application for water rights at one time but allowed the application to be dismissed. Thus, the Shipes do not own the water rights related to the property on which the temporary easements were sought.

Sometime after the Shipes' application had been dismissed, District 25 applied with the DWR for the same water rights. In other words, District 25 does not attempt to take water rights that were previously held or are currently held by the Shipes.

Because the Shipes do not own the water rights, District 25 argues the Shipes lack standing to challenge its authority to acquire water rights. To support the argument, District 25 cites two condemnation cases from other states in which courts held that only owners of the condemned property had standing to object to a condemnation of property. See *In re Condemnation by County of Berks*, 914 A.2d 962, 966 (Pa. Commw. 2007) (investment company had no standing to raise preliminary objections to condemnation because it failed to obtain option to purchase property); *Sunland Park v. Santa Teresa Services*, 134 N.M. 243, 254, 75 P.3d 843 (2003) (ownership of a recognized property interest in the property taken or damaged is what makes the party a "condemnee").

In addition, another out-of-state case discusses who has standing to object to the use of water rights. In *Empire West Side Irrigation Dist. v. Lovelace*, 5 Cal. App. 3d 911, 85 Cal. Rptr. 552 (1970), the water storage and distribution plan of two irrigation districts involved water rights which were appurtenant to the landowners' property. The landowners objected to the way the water was to be distributed under the contract between the two districts. In holding that the landowners had standing to voice their objections, the California Court of Appeals found that because the landowners were members of one of the contracting districts, that district was merely an agent for purposes of diverting, storing, transporting, and delivering water. Consequently, the court determined the landowners, as members of the district, were interested and proper parties. 5 Cal. App. 3d at 914.

The *Lovelace* court juxtaposed its situation with one in which individuals have merely the right to receive water flow. The court

noted that in such cases, those individuals would lack standing because they did not own the water right. 5 Cal. App. 3d at 913-14 (citing *Erwin v. Gage Canal Co.*, 226 Cal. App. 2d 189, 37 Cal. Rptr. 901 [1964] [shareholders did not own water rights and facilities of corporation, but rather owned a right to have water delivered to their properties, a right appurtenant to their land]).

Here, unlike the landowners in *Lovelace*, the Shipes are not members of District 25. Nor do they own the rights to the water. Thus, neither the Shipes nor their agents own the groundwater rights sought by District 25. Consequently, if this action were solely about the condemnation of a water right, the Shipes would lack standing. But that question is not at the heart of this proceeding, even though the Shipes have made it their focus.

Rather, in the eminent domain proceeding, District 25 sought a *temporary easement* that would allow access to the Shipes' property for the purpose of drilling test wells and evaluating water. Unquestionably, the Shipes have standing to object to a temporary easement on their property. Recognizing this, the district court more accurately recast the question as whether District 25 had the power to gain access to the point of diversion on which the application for water rights depends.

This question arises because of K.A.R. 5-3-3a, which provides:

"If the chief engineer [of DWR] is aware, or becomes aware that the applicant does not have legal access to either the point of diversion or the place of use, before an application . . . can be approved by the chief engineer, the applicant shall demonstrate that the applicant has legal access to the proposed point of diversion and the proposed place of use before approval of the application."

See K.S.A. 82a-706a; K.S.A. 2008 Supp. 82a-708a.

Because of this legal access requirement, the district court reasoned that if District 25 ultimately has no authority to use eminent domain as a means of gaining legal access to points of diversion, it would not obtain the permit. It follows, the district court reasoned, that District 25 should not be allowed to test drill and cause damages even on a temporary basis. This reasoning was supported by testimony at the evidentiary hearing in which representatives of District 25 acknowledged "there would be no reason to do the test drilling if we weren't considering this location for a water supply."

Before us, District 25 points out that the current eminent domain action does not seek a permanent easement. Additionally, District 25 emphasizes it may never seek to permanently condemn the Shipes' property. As the District 25 representatives testified at the evidentiary hearing, the drilling on the Shipes' property is meant to provide District 25 information it needs as it weighs various options for obtaining water, including deciding if it will use one of the two other identified points of diversion; obtain other points of diversion that have not yet been identified; or pursue an entirely different source for a potential water supply. Consequently, seeking a permanent condemnation is not a foregone conclusion because even "if the test drilling turns out to be positive," District 25 would look "at all of [its] options. If that still appears to be the most viable option . . . and if [it] can't negotiate a reasonable settlement with the landowners, eminent domain would be [its] last resort."

District 25's argument raises questions of whether the issues relating to water rights are ripe and whether there is a current case or controversy.

## Ripeness

The doctrine of ripeness is "designed 'to prevent the courts, through avoidance of premature adjudication, from entangling themselves in abstract disagreements.' " *National Park Hospitality Ass'n v. Department of Interior*, 538 U.S. 803, 807, 155 L. Ed. 2d 1017, 123 S. Ct. 2026 (2003); see *State ex rel. Morrison*, 285 Kan. at 892. To be ripe, issues must have taken shape and be concrete rather than hypothetical and abstract. *Public Serv. Comm'n v. Wycoff Co.*, 344 U.S. 237, 244, 97 L. Ed. 291, 73 S. Ct. 236 (1952).

Here, all parties agree a temporary easement would not provide permanent legal access to the point of diversion and District 25 will have to obtain permanent legal access to the point of diversion before its application for water rights can be approved. Consequently, the temporary easement is only for the purpose of District 25 gathering information for use in weighing its various options. If the test results are positive, as the district court recognized, the condemnation proceeding would proceed "unless [District 25]

finds a better source of water elsewhere." The possibility that other water sources might be pursued makes it uncertain whether District 25 will ever pursue a point of diversion on the Shipes' property.

Nevertheless, the district court reasoned that even a temporary easement should not be allowed if there is no possibility that a permanent interest in the Shipes' property could be obtained by eminent domain. This reasoning necessarily assumes that the only means of obtaining rights to the property would be by eminent domain. Granted, the Shipes' actions to this point and their representations make it likely that access to the property would not be granted by any means other than condemnation. Yet, this conclusion is not certain. Indeed, if District 25 did eventually file an eminent domain proceeding seeking permanent access to the property, it is possible that someone other than the Shipes would own the property at that point in time.

In other words, the issue that the Shipes wish to have answered is whether District 25 would have the right to condemn their property *if* in the future the water district decided to use their land as a point of diversion, *if* they still had an interest in the land at that point, and *if* the water district was unsuccessful in negotiating a purchase of rights to legal access to the property. This question is hypothetical, and an opinion answering the question would be advisory. See *State ex rel. Morrison*, 285 Kan. at 885.

The issue which is ripe in this action is whether District 25 can proceed with an action to obtain a temporary easement. Because the temporary easement would not give District 25 rights to water and the Shipes have not stated any objections other than those relating to water rights, the Shipes' objections do not provide a basis for enjoining the temporary easement. See *Winkel v. Miller*, 288 Kan. 455, Syl. ¶ 1, 205 P.3d 688 (2009) (in eminent domain proceeding, district court must find that condemnor has the power of eminent domain and that the taking is necessary to condemnor's lawful corporate purposes); *Schuck*, 286 Kan. at 25 (same). In other words, the Shipes have not challenged that District 25 has the power of eminent domain to obtain a *temporary* easement for the purpose of drilling and capping test wells for the purpose of testing

water quality and quantity as part of District's 25's efforts to seek a water supply.

Consequently, we affirm the district court's decision to grant District 25's motion to dismiss, although we do so on a different basis, determining the action should be dismissed for lack of jurisdiction. See *In re Marriage of Bradley*, 282 Kan. 1, 8, 137 P.3d 1030 (2006) (upholding decision of district court where correct result reached although on different grounds).

Affirmed.

McFARLAND, C.J., not participating.

DANIEL L. LOVE, District Judge, assigned.