NOT DESIGNATED FOR PUBLICATION

No. 116,416

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

LABETTE COUNTY MEDICAL CENTER, d/b/a LABETTE HEALTH,
*Appellant*,

v.

KANSAS DEPARTMENT OF HEALTH AND ENVIRONMENT,
*Appellee*.

MEMORANDUM OPINION

Appeal from Shawnee District Court; REBECCA W. CROTTY, judge. Opinion filed July 28, 2017.
Reversed and remanded with directions.

*Michael F. Saunders*, *Blane R. Markley*, and *Kathryn G. Lee*, of Spencer Fane LLP, of Overland
Park, for appellant.

*Brian M. Vazquez* and *Eugene Lueger*, of Kansas Department of Health & Environment, for
appellee.

Before LEBEN, P.J., GARDNER, J., and WALKER, S.J.

*Per Curiam*: Labette County Medical Center (Labette Health) appeals from the
district court's order dismissing its lawsuit against the Kansas Department of Health &
Environment (KDHE) and its finding that Labette Health had no standing to sue. Because
we find that the district court erred by granting the motion to dismiss, we reverse and
remand the case for further proceedings.

1

Labette Health is a Kansas-licensed hospital with its main location in Parsons, Kansas. In addition to inpatient care offered at its primary location in Parsons, Labette Health also provides outpatient and home health care in southeast Kansas. Approximately 14 to 15 percent of Labette Health's inpatient admissions are residents of Independence, Kansas. Labette Health also operates an outpatient clinic in Independence, where it treats around 800 patients each month. Additionally, Labette Health has a rural health clinic and imaging center in Cherryvale, Kansas, which is roughly 10 miles east of Independence.

Kansas-licensed hospitals are required by law to provide emergency services at their hospitals. K.S.A. 65-431(d). Many Kansas hospitals, including Labette Health, receive no payment for the costly emergency services they provide to indigent patients. To remedy this problem, Medicare provides a process by which a hospital can charge higher inpatient fees for services provided at outpatient facilities of that hospital. To be registered as a "provider-based" facility and receive these higher fees, the outpatient clinic must be within 35 miles of the hospital's main facility. Labette Health's Cherryvale health clinic has been certified by KDHE as a provider-based clinic, and Labette Health has applied to have its current outpatient facility in Independence certified as a provider-based clinic as well. This certification would permit Labette Health to charge higher fees for standard health care services to help cover the cost of the emergency services it provides at its main facility for no charge.

In October 2015, the community hospital in Independence closed, leaving its residents without local access to emergency services. In response, Labette Health decided to open a new facility in Independence to provide local emergency health services to residents in that area. Specifically, Labette Health planned to build a hospital emergency department, as well as a rural health clinic, that would provide both primary and specialty

health care. To meet this goal, Labette Health purchased 9.98 acres of land in Independence for $300,000. Labette Health also spent $250,000 for architectural and engineering work and budgeted $5.6 million to build its facilities. Work on the facility was supposed to begin in July 2016 and be completed by July 2017. When the facility is completed, Labette Health plans to apply for a provider-based status.

Following the closure of the community hospital in Independence in 2015, on April 19, 2016, KDHE and its equivalent Oklahoma agency, the Oklahoma State Department of Health (OSDH), entered into a Memorandum of Understanding (MOU). Under this agreement, KDHE agreed to allow the Oklahoma-based Bartlesville Hospital to operate an outpatient imaging center in Independence under its Oklahoma hospital license. The MOU also permitted the outpatient imaging center operated by Bartlesville Hospital to be certified as a provider-based clinic.

Shortly after the MOU was entered, Labette Health filed a petition for declaratory and injunctive relief against KDHE. Labette Health claimed that KDHE lacked the authority to authorize Bartlesville Hospital to operate its imaging clinic in Kansas without being subject to Kansas state hospital licensing requirements and without requiring that Bartlesville Hospital provide emergency services to Kansas residents. Labette Health also argued that KDHE was improperly conferring a financial advantage on Bartlesville Hospital that it denied to Labette Health (*i.e.*, allowing Bartlesville to charge higher fees to Kansas patients to defray emergency room costs at its Oklahoma hospital) and that allowing Bartlesville Hospital to open an outpatient facility in Independence would cause Labette Health financial harm by eroding its patient base.

On May 11, 2016, Labette Health filed a motion asking the district court to issue a temporary restraining order prohibiting KDHE from performing its duties under the MOU until the legality of the contract was determined. The district court held an evidentiary hearing on the matter on June 16, 2016. At the hearing, Brian Williams, the

3

president and CEO of Labette Health, testified about the financial harm that would result if Bartlesville Hospital were permitted to operate an imaging center in Independence. Specifically, Williams stated that Bartlesville Hospital would operate in Labette Health's primary service area where the patient base is already declining. This would cause Labette Health's patient base to erode, which in turn would cause irreparable financial harm to Labette Health and jeopardize its ability to provide an emergency room in Parsons. Furthermore, Williams explained, this financial harm would also threaten Labette Health's ability to complete its planned project in Independence.

Angela Jirik, the survey manager for KDHE, also testified at the hearing. Jirik's job duties included licensing and certifying hospitals. Jirik testified about licensing procedures and requirements in Kansas, and she explained that the Bartlesville Hospital imaging center in Independence would not need a license to operate because hospital licenses are not required for outpatient clinics. Thus, under Kansas law, the Bartlesville Hospital imaging center would not require a Kansas license, and instead it would operate under its Oklahoma hospital license.

After the evidentiary hearing was concluded, but before the district court ruled on the temporary restraining order, KDHE filed a motion to dismiss for lack of jurisdiction and failure to state a claim. Specifically, KDHE argued that Labette Health did not file the action under the Kansas Judicial Review Act, Labette Health lacked standing, and KDHE did not have the capacity to sue or be sued. KDHE also claimed that Labette Health failed to state a claim because KDHE was authorized to enter into interstate agreements. Labette Health filed a response, arguing that the Kansas Judicial Review Act was not applicable, Labette Health had standing, KDHE was without authority to enter into the MOU, and KDHE could sue and be sued.

4

On June, 27, 2016, the district court denied Labette Health's motion for a temporary restraining order. The court found that Labette Health had not demonstrated a substantial likelihood of being able to establish that it had standing.

On July 29, 2016, the district court ruled on KDHE's motion to dismiss without further hearing. The court first found that Labette Health failed to establish a cognizable injury because its alleged injuries were too abstract and hypothetical. The district court next found that Labette Health also failed to show a causal connection between "the business viability" of Labette Health's planned facility in Independence and the certification of Bartlesville Hospital's imaging center. Thus, the district court ultimately granted KDHE's motion to dismiss for lack of subject matter jurisdiction on the grounds that Labette Health did not have standing. Labette Health timely appealed.

ANALYSIS

Labette Health filed suit against KDHE seeking both declaratory and injunctive relief. In Kansas, declaratory relief is only available if there is an actual controversy between the plaintiff and the adverse party. *In re Estate of Keller*, 273 Kan. 981, 984-85, 46 P.3d 1135 (2002). Similarly, "a court's jurisdiction to issue an injunction is dependent upon the existence of an actual case or controversy." *Shipe v. Public Wholesale Water Supply Dist. No. 25*, 289 Kan. 160, 165, 210 P.3d 105 (2009). To issue a declaratory judgment or an injunction, Kansas courts require that (1) the parties have standing, (2) the issues are not moot, (3) the issues are ripe and not "nebulous and contingent," and (4) the issues do not present a political question. See *Shipe*, 289 Kan. at 165-66; *Baker v. City of Overland Park*, No. 101,371, 2009 WL 3083843, at *3 (Kan. App. 2009) (unpublished opinion).

The district court here first refused to issue an injunction or declaratory judgment and later granted KDHE's motion to dismiss after concluding that Labette Health lacked

5

standing. Whether standing exists is a question of law over which this court has unlimited review. *Board of Sumner County Comm'rs v. Bremby*, 286 Kan. 745, 751, 189 P.3d 494 (2008).

"[S]tanding is 'one of the most amorphous concepts in the entire domain of public law.' [Citations omitted.]" *Shipe*, 289 Kan. at 166. As explained by our Supreme Court, "[s]tanding is a jurisdictional question whereby courts determine 'whether the plaintiff has alleged such a personal stake in the outcome of a controversy as to warrant invocation of jurisdiction and to justify exercise of the court's remedial powers on his or her behalf.'" *Bremby*, 286 Kan. at 750-51.

Although the general rule is that standing rules are relaxed in declaratory judgment cases, there still must be an actual case or controversy. *State ex rel. Morrison v. Sebelius*, 285 Kan. 875, 897-98, 179 P.3d 366 (2008); see also *Baker*, 2009 WL 3083843, at *4 ("[W]hile a plaintiff seeking declaratory relief is not required to 'have suffered the full harm expected,' the requirement of standing still must be satisfied for a justiciable controversy to exist.").

Under Kansas' traditional test for whether standing exists, the plaintiff must establish that he or she suffered a cognizable injury and that there is a causal connection between the injury and the defendant's conduct. *Kansas Bldg. Industry Workers Comp. Fund v. State*, 302 Kan. 656, 678, 359 P.3d 33 (2015). Kansas courts have on occasion cited to and applied the standing requirements utilized by federal courts. Specifically, the federal test for standing—which stems from the United States Constitution's "case or controversy" requirement in Article III—requires that (1) the plaintiff suffered an injury in fact or there is a concrete and particularized actual or imminent injury, (2) there is a causal connection between the injury and the complained-of conduct, and (3) the injury can likely be redressed by a favorable decision. *Kansas Bldg. Industry Workers Comp.*

6

*Fund*, 302 Kan. at 679 (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 559-61, 112 S. Ct. 2130, 119 L. Ed. 2d 351 [1992]).

But our Supreme Court made clear in *Kansas Bldg. Industry Workers Comp. Fund* that Kansas courts still utilize the traditional two-part test:

"This court has occasionally cited to the federal constitutional standing requirements. [Citation omitted.] But we have not explicitly abandoned our traditional state test in favor of the federal model. Moreover, as opposed to the United States Constitution, our State Constitution contains no case or controversy provision. The Kansas Constitution grants 'judicial power' exclusively to the courts. [Citation omitted.] And Kansas Courts have repeatedly recognized that 'judicial power' is the '"power to hear, consider and determine controversies between rival litigants."' [Citations omitted.] Given the differences in the genesis of the two systems, we do not feel compelled to abandon our traditional two-part analysis as the definitive test for standing in our state courts." 302 Kan. at 679-80.

Thus, to succeed on its claim, Labette Health must show that it has suffered a cognizable injury and that there is a causal connection between its injury and KDHE's conduct.

*The legal standard for ruling on a prediscovery motion to dismiss*

On appeal, Labette Health first argues that the district court applied the incorrect legal standard when ruling on KDHE's motion to dismiss. The district court applied the preponderance of the evidence standard and concluded that Labette Health failed to prove by a preponderance of the evidence that it suffered a cognizable injury. Instead, Labette Health argues, because the district court was considering whether standing existed based solely on KDHE's motion to dismiss, and on which no hearing was held, the court was required to "accept as true the factual allegations" contained in Labette Health's pleadings and "draw reasonable inferences from it."

7

KDHE disagrees, pointing to the fact that although the standing issue was considered at the motion to dismiss stage, the district court applied the correct legal standard because there was "a verified petition filed, substantial briefing submitted, and an evidentiary hearing . . . that covered [the] standing issues held." As this was not a "bare bones pre-discovery stage," KDHE asserts that the district court correctly applied the correct legal standard.

Moreover, KDHE argues, even if the district court should have used Labette Health's "suggested review standard," Labette Health's claim of error is still unpersuasive because the district court did "provide[] [Labette Health] the fullest possible benefit of all favorable inferences." Thus, according to KDHE, any alleged error in granting the motion to dismiss was harmless.

In *Families Against Corporate Takeover v. Mitchell*, 268 Kan. 803, 809, 1 P.3d 884 (2000), our Supreme Court has given ample warning of the dangers inherent in granting a motion to dismiss at an early stage of litigation:

> "Under K.S.A. 1999 Supp. 60-208, pleadings are to be given a liberal construction. We note that at the time the K.S.A. 60-212(b)(6) motion to dismiss was granted there had been no discovery. The record suggests that no factual matters outside the pleadings were presented to or considered by the district court. We have previously set out the scope of review for a motion to dismiss. See *Bruggeman v. Schimke*, 239 Kan. 245, 247-48, 718 P.2d 635 (1986). The concept of notice pleading relies on its companion, discovery, to fill the gaps. [Citation omitted.] . . . *Dismissal of a petition on a K.S.A. 60-212(b)(6) motion before utilization of discovery is seldom warranted*. [Citation omitted.] Following the teaching of *Bruggeman* we have a duty to determine if the pleaded facts and inferences state a claim on any possible theory. [Citation omitted.]" (Emphasis added.)

8

We are well aware that standing is not merely a pleading requirement. "'Each element must be proved in the same way as any other matter and with the degree of evidence required at the successive stages of the litigation.'" *KNEA v. State*, 305 Kan. 739, 746, 387 P.3d 795 (2017). But this case came to us after the district court granted KDHE's motion to dismiss before discovery and *without a hearing on the motion*. The general rule is that "[w]hen a district court grants a motion to dismiss based on a lack of standing, the appellate court accepts the facts as alleged in the petition as true, and if those facts demonstrate that the appellants have standing to sue, the decision of the district court must be reversed." *Kansas Bldg. Industry Workers Comp. Fund*, 302 Kan. at 676.

It is relatively unclear exactly what legal standard the district court applied in ruling on the motion to dismiss. In its memorandum decision, the court stated that Labette Health "must show by a preponderance of the evidence that it has standing when viewed in the light most favorable to the Plaintiff." The court had previously stated that "[i]n a pre-discovery Motion to Dismiss based on claimed standing deficits in a petition . . . the Court must review the challenged petition and draw reasonable inferences from it," and it was required to accept the facts alleged in Labette Health's petition as true.

However, at another point in its memorandum decision, the district court stated that Labette Health could not show a causal connection by a preponderance of the evidence. Then, at the end of its decision, the court ruled: "In summation, the Plaintiff has failed to demonstrate either a cognizable injury or a causal connection between any such injury and the Defendant's MOU when viewed in the light most favorable to the Plaintiff." Thus, the district court—in the same decision—appeared to apply the standard advocated for by Labette Health, the preponderance of the evidence standard, and some hybrid of the two. KDHE says this confusion of standards is ultimately harmless error in the context of this case. We disagree.

9

We believe the correct standard which the district court should have applied is the one enunciated by our Supreme Court in *Bremby*, 286 Kan. at 751:

"Additionally, we must bear in mind that this case comes before us after the district court granted [a defendant's] motion to dismiss. The district court's ruling was made before commencement of discovery. Under these circumstances, we accept the facts alleged in the petition as true, along with any inferences that can be reasonably drawn therefrom. If those facts and inferences demonstrate that the appellants have standing to sue, the decision of the district court must be reversed. [Citation omitted.]"

In *Aeroflex Wichita, Inc. v. Filardo*, 294 Kan. 258, 259, 275 P.3d 869 (2012), the Kansas Supreme Court was tasked with deciding which legal standard to apply to a standing determination at the motion to dismiss stage after discovery but prior to an evidentiary hearing. The appellee, Tel-Instrument Electronic Corp., cited to cases from other jurisdictions and argued that the district court should have applied the preponderance of the evidence standard. The appellant, Aeroflex, asserted that it only needed to present a prima facie case and the district court should have considered the record in the light most favorable to it when ruling on the motion to dismiss.

The Kansas Supreme Court agreed with Aeroflex, noting that "[t]he various federal cases on which Aeroflex relie[d] represent '[t]he most common formulation found in the [federal] judicial opinions,' which is that the plaintiff 'needs only make a prima facie showing when the district judge restricts her review of the [motion to dismiss] solely to affidavits and other written evidence.'" 294 Kan. at 266. The Kansas Supreme Court went on to explain that the most common approach in federal courts and other jurisdictions is that the preponderance of the evidence standard only applies if the district court has held an evidentiary hearing. 294 Kan. at 267.

"As one court stated, it is only when the court conducts an evidentiary hearing to determine disputed issues of fact and weighs credibility that the burden 'quite properly

10

increases' to 'the same standard that would obtain if the matter were deferred to trial: the preponderance of the evidence.' [Citations omitted.] . . .

. . . .

". . . We have generally applied a preponderance of the evidence standard where the district court has the power to weigh and evaluate the evidence in the same manner as if it were adjudicating the case on the merits and making findings of fact based on a weighing of the credibility of the evidence. . . .

. . . .

"Hence, we reject TIC's arguments and conclude that, even though there was discovery, when a defendant's . . . motion to dismiss for lack of personal jurisdiction is decided before trial on the basis of the pleadings, affidavits, and other written materials and without an evidentiary hearing, any factual disputes must be resolved in the plaintiff's favor and the plaintiff need only make a prima facie showing of jurisdiction." 294 Kan. at 267-70.

Thus, it appears that the determining factor for the appropriate legal standard is whether the district court held an evidentiary hearing in connection with the motion to dismiss. If it did not, then the plaintiff only needs to make a prima facie showing of standing. If, however, there was an evidentiary hearing on the motion (presumably with an opportunity first for at least limited discovery), then the burden increases to the preponderance of the evidence.

We acknowledge that the district court did hold an evidentiary hearing on Labette Health's request for a temporary restraining order, which is also considered a temporary injunction. But the legal criteria a district court must employ at such a hearing are far different from those to be considered in ruling on a prediscovery motion to dismiss.

The prerequisites for obtaining a temporary injunction are: a substantial likelihood that the party seeking the temporary injunction will eventually prevail on the merits; a showing that the movant will suffer irreparable injury unless the order issues; proof that the threatened injury to movant outweighs whatever damage a proposed

temporary injunction may cause the opposing party; and a showing that the injunction, if issued, will not be adverse to the public interest. *St. David's Episcopal Church v. Westboro Baptist Church, Inc.*, 22 Kan. App. 2d 537, Syl. ¶ 2, 921 P.2d 821 (1996).

By ruling serially on the temporary injunction evidence and then denying the plaintiff's motion to dismiss on the basis of pleadings alone, without offering the parties a hearing, it appears likely that the district court effectively bootstrapped the evidence from the first hearing into the second without notifying the parties of its intent to do so.

Although it looks as though the district court applied the incorrect legal standard here, KDHE argues that this error is not fatal because any error on the part of the district court was harmless. We need not consider the harmless error issue, however, because we must review the standing issue on our own, anyway: "[T]he existence of standing is a question of law over which [an appellate] court's scope of review is unlimited." *Bremby*, 286 Kan. at 751. Because the district court decided the issue without an evidentiary hearing on the motion to dismiss, there are no factual findings of the district court to which we would owe deference. We proceed, then, with our independent review of the standing issue.

*Cognizable injury*

The district court addressed both the cognizable injury element of standing and the requirement that issues must be ripe in order to obtain declaratory or injunctive relief at the same time in its memorandum decision. The court then dismissed the case because of Labette Health's lack of standing and the "unripe nature of [its] claimed injuries."

On appeal, the parties are at odds as to whether Labette Health has standing. While similar in nature, the ripeness requirement is distinct from the cognizable injury element of a standing inquiry. See *Shipe*, 289 Kan. at 161 (holding that while appellants had

12

standing, the issue was nonetheless not ripe for adjudication). Therefore, we will only consider whether Labette Health has standing, specifically addressing whether Labette Health has established a cognizable injury. Moreover, it seems as though in using the term "ripe," the district court was actually asserting that Labette Health cannot show that it suffered a cognizable injury because it is only claiming a hypothetical future injury.

Having determined the correct legal standard, we now turn to whether Labette Health established that it suffered a cognizable injury. Again, because the existence of standing is a question of law, this court exercises unlimited review. *Bremby*, 286 Kan. at 751.

Labette Health argues that it has established a cognizable injury—namely, "threatened and actual financial harm." Specifically, Labette Health claims that KDHE has conferred a financial benefit on Bartlesville Hospital that will cause "irreparable financial harm" to Labette Health because: (1) Bartlesville Hospital will be able to charge substantially higher rates for services than those charged at Labette's imaging center; (2) the existence of Bartlesville Hospital will "erode[] its patient base in Kansas by transferring limited financial resources" to Oklahoma; and (3) the financial harm to Labette Health will "threaten[] its ability to provide emergency services" in the areas it serves.

Although KDHE does not directly address Labette Health's arguments, it does claim that because Labette Health has not started operating its facility in Independence, "any financial injury or threat to the viability of [the] future medical facility is speculative."

In passing, we note that in the district court, Labette Health also argued that Bartlesville Hospital would receive an unfair advantage because it will be able to circumvent Kansas licensing requirements, while Labette Health would remain subject to

13

them. Labette Health seems to have abandoned this argument on appeal. As noted in their brief: "Labette Health's alleged injuries, therefore, do not depend on whether any Kansas statute requires the Bartlesville Hospital to obtain a Kansas license."

"To establish a cognizable injury, a party must establish a personal interest in a court's decision and that he or she personally suffers some actual or threatened injury as a result of the challenged conduct. [Citation omitted.]" *Sierra Club v. Moser*, 298 Kan. 22, 33, 310 P.3d 360 (2013). The Kansas Supreme Court has referred to the cognizable injury requirement as "an injury in fact," and has on occasion cited to the federal standing requirement that an injury must be concrete, particularized, and actual or imminent. *Gannon v. State*, 298 Kan. 1107, 1123, 319 P.3d 1196 (2014).

Mere allegations of possible future injury do not meet the requirements of standing and instead, any threatened injury must be certainly impending. *Sierra Club*, 298 Kan. at 33 (citing *Whitmore v. Arkansas*, 495 U.S. 149, 158, 110 S. Ct. 1717, 109 L. Ed. 2d 135 [1990]); see also *Baker*, 2009 WL 3083843, at *5 ("[A]n action seeking [declaratory relief] must, at the very least, establish that the ordinance 'will likely cause tangible detriment to conduct or *activities that are presently occurring or are likely to occur in the near future*.'").

Labette Health first claims that KDHE is conferring a financial advantage on Bartlesville Hospital because it is permitting Bartlesville Hospital to operate in Independence, Kansas, as a provider-based outpatient clinic, and charge higher rates than those charged at Labette Health's clinics. It is unclear exactly how this constitutes a cognizable injury because the rates charged at the Bartlesville Hospital have no effect on Labette Health. Labette Health has no personal interest in the rates charged by Bartlesville Hospital, and Labette Health has provided no explanation of how it will suffer an actual injury if Bartlesville Hospital is permitted to charge more for services than it can.

14

Labette Health next claims that allowing Bartlesville Hospital to operate in Independence will cause financial harm to Labette Health by generally eroding Labette Health's patient base in the Independence area. As we have already noted, Labette Health presented evidence that Independence is already part of its primary service area, with 14% to 15% of Labette Health's inpatient visits coming from Independence residents and with 800 patients per month being treated at Labette Health's clinic in Independence. Labette Health also showed that the population base in the area is declining. In the face of this declining population based, Labette Health has invested substantial amounts toward its Independence expansion. It is in this context that Labette Health's claims must be evaluated on a motion to dismiss.

Labette Health makes at least two specific claims in support of its claim that it will lose business. First, it argues that Kansas patients who use the Bartlesville Hospital imaging center will be referred to the hospital's main facility in Oklahoma for follow-up treatment and additional medical services. In support, Labette Health cites to 42 C.F.R. 413.65(d)(2)(vi) (2016), which governs provider-based facilities and states that "patients treated at the facility or organization who require further care [shall] have full access to all services of the main provider and are referred *where appropriate* to the corresponding . . . department or service of the main provider." (Emphasis added.) Second, Labette Health argues that if Bartlesville Hospital opens an imaging center, it will erode its patient base because patients will seek treatment at the outpatient clinic operated by Bartlesville Hospital. This, Labette Health claims, will "transfer limited financial resources out of its primary service area in Kansas to Oklahoma." As Williams testified at the evidentiary hearing:

> "[Bartlesville Hospital is] directly in our primary service area. We have a clinic there already today. We're planning to expand those services to meet the needs of the community. The population is decreasing at a rate of approximately half a percent. So there is going to be fewer patients, it's either the 74th or 75th poorest county in the State

15

of Kansas, there's limited resources. So if we allow—if we allow the things that we do that have some profit margin in them to be exported to another state where then they can build buildings and hospitals in Tulsa and other places, we're not reinvesting in our communities. So it hurts Labette Health specifically, because it's our primary service area."

In addition, Labette Health alleged in its verified petition that allowing the Bartlesville Hospital to operate in Independence would cause financial harm to Labette Health.

While Labette Health has not completed its planned emergency department and rural health clinic in Independence, it already operates a clinic there and has invested more than half a million dollars toward its Independence expansion plan. In addition, Labette Health already has an imaging center 10 miles east of Independence. So while Labette Health is still only claiming a future injury, it is based on facts and evidence, as well as an expansion plan that is already underway.

We recognize that a threatened or future injury "must be 'certainly impending' and not merely speculative. [Citation omitted.] A claimed injury that is contingent upon speculation or conjecture is beyond the bounds of a . . . court's jurisdiction." *Tandy v. City of Wichita*, 380 F.3d 1277, 1283-84 (10th Cir. 2004). Labette's claim may border on the speculative, but the case is before us on a motion to dismiss before discovery. At this stage of the litigation, we cannot say that liberal construction of the plaintiff's amended petition definitely rules out any possibility of proving Labette Health's legal claim through discovery. We are reminded again of the compelling instructions emanating from *Bruggeman v. Schimke*, 239 Kan. 245, 247, 718 P.2d 635 (1986), over 30 years ago:

"'The question for determination is whether in the light most favorable to plaintiff and *with every doubt resolved in plaintiff's favor*, the petition states any valid claim for relief. Dismissal is justified only when the allegations of the petition clearly demonstrate plaintiff does not have a claim.' [Citation omitted.]

16

"'In considering a motion to dismiss for failure of the petition to state a claim for relief, a court must accept the plaintiff's description of that which occurred, along with any inferences reasonably to be drawn therefrom.'" (Emphasis added.)

The threat of future injury because of the possibility that Labette Health's patient base will erode if Bartlesville Hospital opens an imaging center in Independence is an issue which can be tested out in the real world through discovery. Labette Health's claims are based upon the undisputed facts that Bartlesville Hospital will be opening an imaging center in Independence, as made possible by KDHE's agreement with the State of Oklahoma. We believe Labette Health's contentions that their patient base will erode, that Bartlesville Hospital will operate in their primary service area, and that the population is decreasing have sufficient gravitas to take them outside the realm of pure speculation. This is particularly true given Labette's commitment to a major construction project in Independence. Later discovery may betray Labette Health's claims, but we conclude Labette Health should be able to pursue them at this time.

Finally, Labette Health claims cognizable injury because it may become financially unable to provide emergency services at some locations. On this point, Labette Health is attempting to assert the rights of those who may be denied emergency care at some point in the future because of Labette Health's speculative future financial injury.

It is a well-recognized rule that the "plaintiff generally must assert his [or her] own legal rights and interests, and cannot rest his [or her] claim to relief on the legal rights or interests of third parties." *Warth v. Seldin*, 422 U.S. 490, 499, 95 S. Ct. 2197, 45 L. Ed. 2d 343 (1975). Furthermore, an injury must be more than a generalized grievance common to all members of the public. *Gannon*, 298 Kan. at 1123.

17

Courts permit a plaintiff to assert the rights of others if it can make two additional showings: First, that the party asserting the right has a close relationship with the person who possesses that right; and second, that there is some hindrance to the possessor's ability to protect his own interests. *Kowalksi v. Tesmer*, 543 U.S. 125, 130, 125 S. Ct. 564, 160 L. Ed. 2d 519 (2004). Labette Health makes neither of these showings, so we have not based our ruling in Labette Health's favor on this argument.

*Causal connection between KDHE's actions and Labette Health's injuries*

Finally, we must consider whether Labette Health has established a causal connection between KDHE's actions and its claimed injuries. Although Kansas courts use the traditional Kansas two-part test for standing, our Supreme Court explained that in determining whether there is a causal connection between the defendant's actions and the plaintiff's injuries, it "borrowed" the federal definition of causal connection. *Kansas Bldg. Industry Workers Comp. Fund v. State*, 302 Kan. 656, 681, 359 P.3d 33 (2015).

To establish a causal connection, "'the injury must be "fairly . . . trace[able] to the challenged action of the defendant, and not . . . th[e] result [of] the independent action of some third party not before the court."'" 302 Kan. at 681 (quoting *Lujan*, 504 U.S. at 560).

This is not a high bar:

> "'Such a nexus is most easily shown if there is a direct relationship between the plaintiff
> and the defendant with respect to the conduct at issue. However, while the "indirectness"
> of an injury "'may make it substantially more difficult'" to show the "fairly traceable"
> element of . . . standing, . . . indirectness is "not necessarily fatal to standing," . . . because
> the fairly traceable standard is lower than that of proximate cause.' [Citations omitted.]"
> *Kansas Bldg. Industry Workers Comp. Fund*, 302 Kan. at 681-82.

Put otherwise, standing "does not require proximate causation, it suffices that the injury flow indirectly from the challenged conduct." 302 Kan. at 682 (citing *Focus on the Family v. Pinellas Suncoast Transit*, 344 F.3d 1263, 1273-74 [11th Cir. 2003]).

Labette Health claims that the district court's conclusion that it could not establish a causal connection was based on an erroneous interpretation of Kansas law; Labette Health is correct. The district court stated that "when 'the defendant's actions are the very last step in the chain of causation,' the injury cannot be fairly traceable to the defendant," citing *Kansas Bldg. Industry Workers Comp. Fund*, 302 Kan. at 682. This statement is incorrect.

In *Kansas Bldg. Industry Workers Comp. Fund*, the Kansas Supreme Court stated: "It is wrong to equate injury '"fairly traceable"' to the defendant with injury as to which the defendant's actions are the very last step in the chain of causation." 302 Kan. at 682 (quoting *Bennett v. Spear*, 520 U.S. 154, 168-69, 117 S. Ct. 1154, 137 L. Ed. 2d 281 [1997]). Contrary to the district court's interpretation, this means that even if the defendant's actions are not the "very last step in the chain of causation," the plaintiff's injury nonetheless can still be fairly traceable to the defendant's conduct.

Here, although KDHE's actions would not be the very last step in the chain of causation, Labette Health's alleged future injuries are fairly traceable to KDHE's conduct. Labette Health claimed that it would suffer irreparable financial harm if Bartlesville Hospital were to open an outpatient facility in Independence. According to Labette Health's allegations, Bartlesville Hospital could not operate as a provider-based outpatient facility of an Oklahoma hospital in Kansas without the agreement of KDHE to certify compliance in Kansas with various federal regulations and provide that information to Oklahoma authorities. The Oklahoma authorities would then report the overall compliance of the Bartlesville Hospital, including its Kansas operation, to federal authorities. Thus, Labette Health's claimed injuries are fairly traceable to KDHE's

19

execution of the MOU with Bartlesville Hospital because without the MOU under which the KDHE provides these services, there would be no threat of financial harm to Labette Health. For this reason, the district court incorrectly determined that Labette Health could not satisfy the causal connection element of the standing requirement.

In summary, we find that Labette Health has, through its pleadings, met the threshold burden of demonstrating standing under the holdings of *Bremby*, *Families Against Corporate Takeover*, *Bruggeman*, and similar cases so as to survive a motion to dismiss. We conclude that Labette Health's pleadings sufficiently support the inference that it may suffer cognizable injuries in the future and that there is a causal connection between the actions of KDHE and those potential injuries. For these reasons, the district court's dismissal of Labette Health's claim for lack of standing must be reversed.

Reversed and remanded with directions to vacate the order dismissing Labette Health's claim and for proceedings consistent with this order.